KANSAS PACIFIC RAILWAY CO. v. COMMISSIONERS OF RILEY COUNTY.

ASSESSMENT OF RAILROAD PROPERTY; *Powers of State Board of Equalization Under Act of 1874.* Under the railroad tax law of 1874 as amended in 1875, the action of the state board of equalization in raising the assessment of that portion of plaintiff's property described in the statute as "railroad track," is not impeached by proof that, in so raising it, the board acted only upon the information furnished by the schedules and statements duly returned by the various companies to the state auditor, and their personal knowledge of the value and business of the several railroads, providing that in so doing they have only equalized values, and have not increased the aggregate assessment; and such action is conclusive as to the proper valuation of such property, notwithstanding errors in the prior proceedings of assessors and commissioners.

*Error from Riley District Court.*

INJUNCTION brought by the *Railway Company* to restrain the collection of an alleged illegal levy of taxes upon the property of such company in the county of Riley for the year 1875. The district court granted a temporary injunction, but on the trial, at the September Term 1876, dissolved that injunction, and rendered judgment for the county. The *Railway Company* brings the case here. The total valuation of its property in Riley county, as returned by the company itself to the auditor of state, was $64,525.46. The equalized valuation, upon which taxes for 1875 were imposed, was $103,580.33. The amount of taxes imposed by reason of such increased valuation, was $1,513.43; and it was this amount which the company sought to enjoin.

*C. E. Bretherton,* for plaintiff in error.

*R. B. Spilman,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The questions in this case arise under the tax law of 1874, as amended by the legislature of 1875. The facts briefly are these: The railway company made its schedule and returns to the county clerks of the several counties, and to the state auditor, as required. The valuations as placed by the company were increased in the various counties, and as increased returned to the state board of equalization. So far as the counties other than Riley are concerned, there is nothing to show that the valuations were not so increased upon notice to the company, and full hearing by the commissioners. As to Riley county, it appears that the valuation returned by the company was increased by the township assessors, and the valuation of the assessors slightly reduced by the county board of equalization; and all this without notice to the company. The state board of equalization increased the total valuation of plaintiff's property, and the valuation of that portion in Riley county, increasing the latter above

both the company's valuation and that of the commissioners. According to the testimony of the state auditor, the state board had before it no evidence other than the returns made by the various companies in the state, and made the changes upon those returns and their own personal knowledge of the business and value of the different railroads. It does not appear that the total valuation of all railroad property in the state was changed from that returned by the companies or the county clerks. The case is rested upon the fact, that plaintiff's valuation was increased, and without any testimony other than the various statements and returns of the companies themselves. Upon these facts, the action of the assessors, of the county commissioners of Riley county, and of the state board, are all challenged. Elaborate briefs have been filed, criticising the action of these different officers, and pointing out such defects therein as was thought invalidated such action.

We think it clear that if the action of the state board can be sustained, it is immaterial what errors were made by the inferior authorities. If the valuation placed by the state board was correct, and correctly reached, that avoids the need of further inquiry. Section 10 of the law of 1874 reads:

"The auditor of state shall annually, on the meeting of the state board of equalization, lay before said board the statements and schedules herein required to be returned to him, and such board shall equalize the assessment of such property in such a manner that the valuation of each railroad track shall be uniform throughout the entire length of the road within the state; and they shall also equalize the assessments of all the railroads, so that the relative assessments of the different roads shall be just and equitable; provided, that they shall not reduce the total assessment of the railroads as returned by the county clerks."

This section was unchanged by the law of 1875, and was in force at the time of the proceedings complained of. Now, that the statements and schedules were placed before the state board, that such board acted upon them, that they equalized the assessment of plaintiff's property so as to make the valuation of its railroad track uniform throughout its entire

length in the state, and that they equalized the assessments of all the railroads, so that their relative assessments should be just and equitable, is affirmatively shown. That they increased the aggregate assessment of all the railroad property, or that their total valuation differed from that returned by the county clerks, is not shown. All that is shown as matter of complaint is, that the assessment of plaintiff's property was largely increased, and that the changes were made upon the various statements and schedules returned and the personal knowledge of the members of the board of the business and value of the different railroads. That an increase was made in the assessment of plaintiff's property, proves nothing. The very idea of equalization is, that while some are decreased, others are increased. So that the only real objection is, that the board made these changes upon the company's returns, and their personal knowledge, instead of subpenaing witnesses, hearing testimony, conducting a judicial examination, and placing their decision upon the evidence thus adduced. The question then resolves itself into this: Upon what may a board of equalization act? May they act entirely upon the assessments and returns made to them, guided by their personal knowledge, or must they accept the assessment and returns as conclusive unless other and outside testimony is produced? We think they may act entirely upon the assessment and returns made to them, guided by their own knowledge. We do not mean that they are limited to these matters, and that they cannot procure testimony and avail themselves of other means of information. The matter of equalization is committed to their discretion. It is not a judicial proceeding, nor one from which error will lie. *Auditor of State v. A. T. & S. F. Rld. Co.*, 6 Kas. 500. They may avail themselves of such means of information as they may deem necessary. If they are satisfied that the assessments and returns themselves furnish all the information necessary to enable them to make a just and fair equalization as between the different taxpayers or districts, they may act upon them alone. If in any matter they desire further in-

formation, they may seek it whence and in what manner they deem best. In the case of *Cuse v. Dean*, 16 Mich. 12, the court says: "The power of equalization by the board being confined to the real estate, and the whole subject being under their complete jurisdiction, they may adopt their own means of reaching the result; and when that result is reached it is conclusive, and cannot be invalidated by evidence that they had adopted as a basis an erroneous footing or aggregate of the valuations returned by the supervisors." In the case at bar, the schedules and returns required to be furnished by the railroad companies contain no little information upon which to base an assessment or make an equalization. For instance, the schedule shows among other things, "the number of ties in track per mile; the weight of iron or steel per yard used in main or side track; what joints or chair are used in track; the ballasting of road, whether with gravel or dirt; the number and quality of buildings or other structures used on right-of-way; the length of time iron in track has been used, and the length of time the road has been built." Now such facts as these stated by the various companies furnish valuable data from which to make a fair and just equalization of the values returned. If deemed sufficient by the board, the equalization made by them cannot be declared void by the courts because further testimony was not sought and received. We think therefore, that so far as their action is based solely upon said section 10, and as to all of the property therein referred to, the action of the state board must be sustained.

But it is said that by section 8 the schedules and statements required to be returned to the state auditor by the companies only embrace a certain portion of the company's property, and that as to the remainder the only assessment that legally comes before them is that returned by the counties; and that therefore, if as to such property the assessment is illegal, their action based thereon must also fail. Section 8 reads:

"SEC. 8. * * * The company * * * shall return to the auditor of state sworn statements or schedules as follows: Showing the property held for right-of-way, and the length

of the main and all side and second tracks and turnouts in such county, and each township in the county, through or into which the road may run, and the number of acres thereof. They shall also state the value of improvements and stations located on the right-of-way, as required in sections two and three of this act."

Now it would seem a fair construction of this section, that it required a return to the auditor of a schedule of the property known as "railroad track" only as distinguished from that described as "rolling stock," and for two reasons: first, it specifies only the kind of property embraced within the term "railroad track," as defined in the statute; and second, if it had been the intention to require as full schedules to be returned to the auditor as to the county clerk, how natural it would have been to have simply said "like schedules," or something of that kind, rather than enter into a statement of what the schedules returned to the auditor should contain. On the other hand, it may be said the statement or schedule is to contain the "value of improvements" "as required in section three," and that section three refers exclusively to "rolling stock," and that the company in fact recognized this as the true construction, for it returned full schedules of all its property to the state auditor.

Now we shall not decide this question, because the matter already considered by us compels an affirmance of the judgment, for it is not claimed that a tender was made of the taxes which, as we have construed the statute, were clearly due, and hence the court properly refused the injunction, and there was no error in its ruling. Sometimes it is proper for this court to go beyond the matters absolutely essential to a decision of the case, and express its views upon other questions fairly in the case, and which may affect the rights of the parties in the further progress of litigation between them. But we are constrained to think this is not such a case. The act under which these tax proceedings were had has been repealed, and no new litigation is likely to arise under it. It is an act full of confusion and difficulties. It has been before us in one or two cases, and scarcely a question presented un-

der it have we been able to settle to our complete satisfaction. This very case has been before us for several months, and has been examined and reëxamined from one standpoint and another, until finally we have reached a conclusion which enables us to dispose of the case; and beyond that we care not to inquire. We hold therefore in conclusion that so far as relates to that property known in the statute as "railroad track," the action of the state board has not been impeached, and the judgment will be affirmed.

All the Justices concurring.