[No. 26.   Third Appellate District.—July 1, 1905.]

J. L. MAURER, Respondent, v. S. F. WEATHERBY, Treasurer of City of Eureka, Appellant.

MUNICIPAL CHARTER—DUTY OF ASSESSOR—POWER OF CITY COUNCIL TO CONTRACT FOR SPECIAL DATA.—Where a municipal charter makes the general law pertaining to revenue and taxation for state and county purposes applicable to revenue and taxation for city purposes, and the powers of the city council are as unlimited as the powers of the boards of supervisors, the council has power, in aid of its work of equalization in cases of undervaluation, to make a special contract for an abstract of the assessment-roll by the city, with comparisons with the county assessment-roll, and with maps and other data and information relevant to undervaluation not included in the information required from the city assessor, and to order the compensation therefor paid out of the city treasury.

ID.—MANDAMUS—EVIDENCE—WILLINGNESS OF ASSESSOR IMMATERIAL.— In a proceeding for a writ of mandate against the city treasurer to compel the payment of a warrant for such compensation, evidence of what data the city assessor had the ability and inclination to furnish was immaterial, and was properly excluded.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order denying a new trial. E. W. Wilson, Judge.

The facts are stated in the opinion of the court.

E. P. Campbell, and Edwin S. Easley, for Appellant.

J. H. G. Weaver, and Coonan & Kehoe, for Respondent.

McLAUGHLIN, J.—The plaintiff applied for a writ of mandate commanding the defendant as city treasurer of the city of Eureka to pay a warrant drawn in plaintiff's favor by the proper officers of said city. A trial was had and judgment was entered directing that a peremptory writ of mandate issue commanding the defendant, as such treasurer, to pay the amount of the warrant.

The defendant appeals from said judgment and from the order denying his motion for a new trial. The warrant was drawn in payment for certain services performed under a written contract the validity of which is the bone of contention on this appeal. Said contract was between the city of Eureka and plaintiff, and there seems to be no objection as to its form or proper execution. The services to be rendered are set forth in the agreement in the following language:—

"The said party of the second part hereby agrees to furnish and render to the council of Eureka, and to the council sitting as a board of equalization, certain maps, data, and information and services as follows, to wit: An abstract of the assessment-roll of the city of Eureka, with various comparisons with the county assessment-roll of Humboldt County, California, and with maps, and other data and information, showing a gradual raise in such properties as may be deemed undervalued in their present assessed valuations. In the said properties are included real property and the improvements thereon and personal property. These maps, data, and information are to be of such character as will aid the council, as such, and as sitting as a board of equalization, in equalizing the assessment-roll and the taxation of the properties in the city of Eureka. The above abstracts, maps, data, and information are to be furnished to the council any time between now and the final adjournment of the council sitting as a board of equalization when requested."

The main contention of appellant is, that this contract is void for the reason that the services to be rendered are included in the legal duties of the city assessor, and hence that the council could not legally employ plaintiff to perform them.

Section 79 of the charter of Eureka makes the general law pertaining to revenue and taxation for state and county purposes applicable to revenue and taxation for city purposes. Upon all officers of the city the same powers are conferred and the same duties imposed as rest upon county officers in relation to such matters. The city council and city assessor under this section are vested with powers and duties co-extensive with the powers and duties of boards of supervisors and county assessors. The only substantial exceptions are that the city assessor instead of the county recorder must prepare the abstracts of encumbrances provided for in section 3678 of the Political Code and "furnish such information as may be required." It will thus be seen that whatever duties rest upon a county assessor are imposed upon the city assessor, and that the powers of the city council are as unlimited as the powers of boards of supervisors in such matters.

The general law provides that the board of supervisors must furnish the assessor with certain maps, blanks, and data, but we can find no law requiring the county assessor to do more than to give the board the benefit of his experience and advice and an explanation of the basis or rule governing his valuation. He must give the board such information as he possesses, but he is not required to make special investigations, comparative statements, maps, and general abstracts. (Political Code, secs. 3630, 3651, 3654, 3658, 3677, 4300.) The charter imposes no greater duties upon the city assessor. These services are not included in the general phrase providing that "he must furnish information required." He must furnish the abstracts necessary to enable him to make an assessment, but no more. The contract here provides for services with which the assessor has nothing whatever to do. The board of equalization is practically a board of review to pass upon his work, and it would be passing strange if they could have recourse to no other source of information than the person upon whose work they sit in judgment. Boards of equalization cannot increase an assessment unless they have evidence before them justifying such increase. (*Oakland* v. *Southern Pac. Co.*, 131 Cal. 230, [63 Pac. 371].)

When an assessment is too high the taxpayer may be depended upon to furnish the evidence upon which they may act in reducing it. But if there is an undervaluation, the

assessor having recorded his best judgment on the face of the assessment-roll, we have no doubt that the board may call to its aid such maps, abstracts, data, and information as will enable the members to act fairly, intelligently, and legally in equalizing assessments. They are not limited to information and data the assessor may be able or willing to furnish. (*Lewis* v. *Colgan,* 115 Cal. 529, [47 Pac. 357]; *Kansas Pacific Ry. Co.* v. *Riley County Commrs.,* 20 Kan. 141; *City of Grand Rapids* v. *Welleman,* 85 Mich. 234, [48 N. W. 534]; *Bardrick* v. *Dillon,* 7 Okl. 535, [54 Pac. 785]; Am. Digest, 1892, p. 4883; *La Grange etc. Co.* v. *Carter,* 142 Cal. 565, [76 Pac. 241].)

If the powers of the board were so limited, then when the assessor was content with the valuation there could be no evidence upon which to base an increase. And if their powers are not so limited, they may legally enter into *bona fide* contracts for such services as are provided for in the contract under consideration.

There was no error in excluding the testimony of the assessor touching the information he had the ability and inclination to furnish. This had no relation to the vital point in the case, which was not what he may have been willing to do, but what he was compelled to do, under the law defining his duties. This was a question of law, and not of fact.

This disposes of all questions presented by the pleadings and discussed in the briefs.

The judgment is affirmed.

Buckles, J., and Chipman, P. J., concurred.