[Civ. No. 14529. Fourth Dist., Div. One. Feb. 18, 1976.]

L. R. "LEE" HUBBARD, JR., Plaintiff and Respondent, v.
CITY OF SAN DIEGO et al., Defendants and Appellants.

## COUNSEL

Michael Babunakis, in pro. per., Knutson, Tobin & Meyer and LeRoy W. Knutson for Defendants and Appellants.

Hillyer & Irwin, Oscar F. Irwin and David J. Loadman for Plaintiff and Respondent.

## OPINION

**WHELAN, J.**[*]—The defendants, City of San Diego (City) and certain of its officers, including Michael Babunakis, have appealed from a declaratory judgment that four ordinances of City and a contract entered into by City are in violation of City's charter. Plaintiff is a citizen and taxpayer of City.

The contract in question was executed by City July 16, 1973 with Michael Babunakis, one of the defendants. By its terms Babunakis, for a period of one year beginning July 1, 1973, was to provide his contractual services as a full-time economic analyst for the purpose of assisting the legislative body in matters of intermediate and long-range fiscal impact. He was to furnish fiscal analysis services to the legislative body as determined in conference by a majority of said legislative body to be necessary and desirable for their information and use. Such services were to include but not be limited to:

1. Fiscal forecasting and planning, to include also need and means of financing long-range capital improvement programs.

2. Comparative analyses of revenues and expenditures by City.

[*]Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

3. Ongoing review of tax problems and fiscal expenditures.

4. Analyses of federal/state/local programs to determine the magnitude and appropriate share of funding and related analyses of existing programs as to cost/benefits and feasibility with economic impact effect upon changes in spending levels.

5. Economic impact review of proposed legislation.

6. Construction of economic models and indices which will serve as an early warning system when changes were adopted or proposed.

7. Special fiscal and economic impact study projects as assigned.

Compensation was fixed, and in addition City was to reimburse Babunakis for necessary expenses, including travel and subsistence, when determined to be necessary by a majority of the legislative body; to provide Babunakis at the City administration building with necessary office space, materials and staff as follows:

1. Up to three analysts on an "as-needed" basis depending upon requirements and direction issued by and authorization received from the legislative body.

2. One intermediate stenographer, full-time.

3. One intermediate typist, full-time.

The contract was signed on behalf of City by the assistant to the City manager.

On September 12, 1974, the City council passed and adopted ordinances 11386NS, 11387NS and 11388NS.

Ordinance 11386 declared:

"The Department of Legislative Analyst is a City Department. The Director of the department is the Legislative Analyst who is the administrative head of the department. He shall be appointed by and removed by a majority of the Council.

"SEC. 22.2302 POWERS AND DUTIES OF LEGISLATIVE ANALYST

"The Legislative Analyst shall *assist the Council in the conduct of legislative inquiries* and in the making of legislative decisions. The scope of the department's activities shall be defined by the Council at periodic meetings acting as the Committee of the Whole or by such procedures as the Council acting as the Committee of the Whole shall hereafter adopt.

"The department, through its director, shall report to the Council its activities in writing semi-annually at the scheduled Council meeting of the first week of the first and third quarters of the calendar year, or more often as the Council may hereafter direct."

Ordinance 11387 amended an existing Municipal Code section which listed city departments to include the department of legislative analyst. The ordinance declared the purpose and intent of the City council to enumerate the existing "departments of the City because of repeated reference in City legislation and operation to such departments . . . within the meaning of the Charter and ordinances of said City . . ." The list of departments included several established by the charter as departments such as police, fire, park and recreation. Among others, it listed also as separate departments each of the eight councilmanic districts, the city manager, the mayor, the auditor and comptroller and the city treasurer; there is also a department of councilmanic administration.

Ordinance 11388 amended an existing ordinance "to create and establish in the Executive category the unclassified position of Legislative Analyst"; it declared, "The position of Legislative Analyst shall be inserted in Exhibit C of Ordinance No. 11331 (New Series), as amended, under the general category of EXECUTIVE . . ."

On January 2, 1975, the City Council passed and adopted ordinance 11467 (new series), thereby amending ordinance 11386 which first defined the "Powers and Duties of Legislative Analyst." We detail its provisions hereafter.

City is governed under a charter approved by the Legislature April 15, 1931.

■■■■ We hold that each of the ordinances purporting to establish the department of legislative analyst, with the powers and duties defined therein, and of which the legislative analyst would be the chief administrative officer, are contrary to the provisions of the charter and, therefore, invalid.

Evidence was presented in the trial court, but a reporter's transcript is not a part of the record on appeal. There is nothing to show whether, under the 1973 contract, the analyst worked in cooperation with the manager, or the nature of his performance.

It appears that the original contract with the legislative analyst was with the approval of the manager, and that the contract provisions have now been superseded. We do not hold that contract invalid, except to the extent it may have contemplated a permanent arrangement outside the city service; and that contingency has not come about. The contract as performed and terminated was, therefore, not invalid.

■ Under the Constitution the charter of a city is not only the organic law of the city, but it is also a law of the state within the constitutional limitations. (*C. J. Kubach Co.* v. *McGuire,* 199 Cal. 215, 217 [248 P. 676].)

Under the San Diego City Charter, the manager is the chief administrative officer of the City (charter, § 27).

The general powers and duties of the manager are outlined in sections 28 and 29 of the charter.[1] Additional specific powers and duties are contained elsewhere, such as sections 45, 57 and 58, under which he is to appoint the City treasurer, chief of the police department and chief of the fire department, all subject to confirmation by the City council.

---

[1]Section 28 in part provides:

"It shall be the duty of the Manager to supervise the administration of the affairs of the City except as otherwise specifically provided in this Charter: to make such recommendation to the Council concerning the affairs of the City as may seem to him desirable: to keep the Council advised of the financial condition and future needs of the City: to prepare and submit to the Council the annual budget estimate and such reports as may be required by that body, including an annual report of all the Departments of the City: to see that the ordinances of the City and the laws of the State are enforced; and to perform such other duties as may be prescribed by this Charter or required of him by ordinance or resolution of the Council. Except as otherwise provided in this Charter, all other administrative powers conferred by the laws of the State upon any municipal official shall be exercised by the Manager or persons designated by him. He shall assume the position of Director of any Department under his control for which a Director has not been appointed. The Directors, or heads of the administrative Departments under the Manager shall be immediately responsible to him for the efficient administration of their respective Departments. The Manager may set aside any action taken by a Director or Department subordinate responsible to him, and may supersede him in authority in the functions of his office or employment. . . . The Manager, as Chief Budget Officer of the City, shall be responsible for planning the activities of the City government and for adjusting such activities to the finances available. To this end he shall prepare annually a complete financial plan for the ensuing year and shall be responsible for the administration of such a plan when adopted by the Council. He shall be charged with the

Section 39 provides that the City auditor and comptroller "shall prepare and submit to the City Manager such information as shall be required by the City Manager for the preparation of an annual budget."

Section 69 details the duties of the manager in submission of the annual appropriation budget.[2]

Section 32 provides in part: "The Manager and such other officers of the City as may be designated by a vote of the Council may attend all meetings of the Council but shall have no vote therein. The Manager or other officer so selected shall have the right to take part in discussions or matters properly before the Council relating to his office . . . ."

An examination of the charter shows that it provided for several departments with that title, including the police and fire departments. Section 26 of the charter declares that: "The existing Departments, Divisions and Boards and existing Offices of the City Government are hereby continued unless changed by the provisions of this Charter or by ordinance of the Council. The Council shall by ordinance, by majority

---

bringing together of estimates covering the financial needs of the City, with the checking of these estimates against the information relative to past expenditures and income, with the preparation of the budget document and supporting schedules and with the presentation of the budget to the Council. He shall have the power, with the approval of the Council, to employ experts, or consultants to perform work or give advice connected with the Departments of the City when such work or advice is necessary in connection therewith . . . .

" . . . . . . . . . . . . . . . . .

"During January of each year the Manager shall present to the Council an annual report of the City's affairs for the previous fiscal year."

Section 29 provides in part:

"The Manager shall be responsible to the Council for the proper administration of all affairs of the City placed in his charge, and to that end, subject to the Civil Service provisions of this Charter and except as otherwise provided herein, he shall have the power to appoint and remove all officers and employees in the administrative service of the City under his control; . . ."

[2]Section 69 provides in part: "On or before the first meeting in May of each year the Manager shall prepare and submit to the Council a budget of the expense of conducting the affairs of the City for the ensuing fiscal year. Departments not under the Manager shall submit their annual budget estimates to the Manager, or to such official as he may designate, and in such form as he shall require on or before April 15th for transmittal in proper form by the Manager to the Council. The budget shall include a summary outline of the fiscal policy of the City for the budget year, describing in connection therewith the important features of the budget plan; a general budget summary setting forth the aggregate figures of the budget in such manner as to show the balanced relations between the total proposed expenditures and the total anticipated income and other means of financing the budget for the ensuing year, contrasted with the corresponding figures for the current year. The classification of the estimate shall be as nearly uniform as possible for the main divisions of all Departments and shall furnish necessary detailed fiscal information."

vote, adopt an administrative code providing for the detailed powers and duties of the administrative offices and departments of the City Government, based upon the provisions of this Charter. Thereafter, except as established by the provisions of this Charter, the Council may change, abolish, combine, and rearrange the departments, divisions and boards of the City Government provided for in said administrative code, but such ordinance creating, combining, abolishing or decreasing the powers of any department, division or board shall require a vote of two-thirds of the members elected to the Council."

Since the adoption of the charter several of the departments specifically provided for by it have been abolished by vote of the people.[3]

It is clear that the charter provisions have been interpreted to mean that the power of the council to "change, abolish, combine, and rearrange the departments, divisions and boards of the City Government provided for in said administrative code" is limited by the words "except as established by the provisions of this Charter."

The powers and duties of the legislative analyst as defined in ordinance 11467 include:

"(1) Gathering, organizing, and analyzing data and information relative to matters requiring legislative action, such as transportation, mass transit, C.P.O. and regional governmental organization, land use development and programs, and municipal expenditures and revenues.

"(2) Providing a formal, comprehensive annual budgetary analysis, including an in-depth program analysis prior to Council action as set forth in Section 71 of the City Charter.

"(3) Providing comparative studies of other cities as they relate to municipal operations.

"(4) Providing comparative analysis of the impact and feasibility of various programs and suggestions presented to the Council for legislative action.[1]

"(5) Performing related work as directed by the Council."

---

[3]Department of public works; department of inspection; department of public health; social service department; playground and recreation department, etc.

Section 114 of the City's charter provides for the establishment of a bureau of information and publicity, which the council may establish, but which, if established, is "under the supervision and control of the Manager." Some of the functions of that bureau would be to "have charge of the editing, printing and distribution of all municipal records, reports and documents; collect and compile information and statistics concerning all Departments and offices of the City, and other municipalities . . . ."

A comparison of the challenged ordinance with the charter provisions shows there are other duplications or overlappings of functions which are given by the charter to the manager.

Equally important is the fact that the powers and duties assigned by the ordinance to the legislative analyst department, regardless of whether they are duplications of the manager's duties, are clearly of a like character with duties which, when performed by the manager, are administrative. Persons performing such duties, under the charter, are subject to the manager's supervision, except as the charter may provide otherwise.

■ We face the problem whether the council, under the charter, may create a department of city government not provided for by the charter and remove it from the supervision and control of the manager by designating that department a legislative department without regard to the powers and duties attempted to be given to it.

We hold that the council cannot do so.

The council may not create a department of the city government, by whatever name it is given, which duplicates or infringes upon the specific powers or duties assigned by the charter to another department or, generally, to the manager.

It is of no importance whether a bureau of information and publicity has been established. If powers and duties of the manager under section 114 are attempted to be vested in another department over which the manager is declared to have no supervision or control, the action is ultra vires. If the reports of the legislative analyst are municipal records, reports or documents, their editing, printing and distribution are to be under the supervision and control of the manager.

The charter makes it clear that the council has power to consult with and obtain the advice of noncompensated advisory boards of a continuing nature, of temporary citizens committees "on technical questions with clearly defined objectives" (charter, § 43); and of "persons employed . . . for expert professional temporary service (§ 117).[4]

The principle finds a statutory authorization in Government Code section 37103 and its earlier sources.

"[W]here a charter is silent a city may exercise powers conferred upon it by general law provided such general powers are not inconsistent with those granted by the charter . . . [A] public agency may contract for expert services unless specifically prohibited by constitutional or statutory provision . . ." (*San Francisco* v. *Boyd,* 17 Cal.2d 606, 617-618 [110 P.2d 1036].)

The efficient performance of its duties would not permit the council to accept as conclusive information, reports and budget figures furnished by the manager.

In *Maurer* v. *Weatherby,* 1 Cal.App. 243 [81 P. 1083], the court reviewed the legality of a contract entered into by the chartered City of Eureka, under which the other party to the contract was to furnish maps, data and information "of such character as will aid the council, as such, and as sitting as a board of equalization, in equalizing the assessment-roll and the taxation of the properties in the city of Eureka. . . ." (p. 244.)

In considering whether the contract called for services which the assessor was required by the charter to give to the council, the court said of the assessor's duties:

"These services are not included in the general phrase providing that 'he must furnish information required.' He must furnish the abstracts necessary to enable him to make an assessment, but no more. The contract here provides for services with which the assessor has nothing whatever to do. The board of equalization is practically a board of review to pass upon his work, and it would be passing strange if they

---

[4]Section 117 of the charter deals with the unclassified and classified service of city. Among those in the unclassified service are "[p]ersons employed in positions for expert professional temporary service when such positions are exempted from the Classified Service for a specified period of temporary service by order of the Civil Service Commission."

could have recourse to no other source of information than the person upon whose work they sit in judgment. . . .

" . . . They are not limited to information and data the assessor may be able or willing to furnish. [Citations.]

"If the powers of the board were so limited, then when the assessor was content with the valuation there could be no evidence upon which to base an increase. And if their powers are not so limited, they may legally enter into *bona fide* contracts for such services as are provided for in the contract under consideration." (*Maurer* v. *Weatherby,* 1 Cal.App. 243, 245-246 [81 P. 1083].)

The right must be recognized of the council as a body, and of each member of the council, to employ one or more assistants to do clerical, research, analytical, reporting and communications work to facilitate the performance of the duties of the legislative body and its members. Included in that category would be agents to obtain desired information from the manager, and to analyze it and the proposed budget for the benefit of the members of the council individually or collectively.

Such agents or employees would be only representatives of the council or its members operating in extension.[5] Such representatives, acting on the initiative and under the direction of the council or its members, clearly differ from a department of the City working on its own initiative and with its own administrative head, and in its internal administration independent of both council and manager.

Under the authorities cited, it is within the power of the council to secure the contractual services of a legislative analyst on an ad hoc basis.

It is not within the power of the council to use such a contract for the purpose of an "ongoing" program of any kind, if by that phrase, used in the contract under consideration, is meant a permanent arrangement outside the framework of the City service.

---

[5]It was probably to serve that purpose that the council in section 22,1801 of the Municipal Code has defined each member of the city Council as a department, so that under charter section 117 there would be in the unclassified service "one principal assistant or deputy in each department." That language contemplates other possible assistants in the classified service. There is also a confidential secretary to the council.

It may be that the City council, in creating the department of legislative analyst, has desired to have a legislative analyst similar to the officer with that title whose office is created by Government Code section 9143, who, as an employee of the Joint Budget Committee of the California Legislature, is paid out of funds allocated to that committee for its operations.

The powers and duties of the department of legislative analyst as defined in the questioned ordinance are far more embracing than the duties of the legislative analyst to the joint budget committee. As we have noted, the ordinance would permit the performance of some duties that under the charter are the responsibility of the manager.

The question to be answered is whether such a separate and self-administered department, whose functions in many respects overlap powers and responsibilities specifically placed by the charter in the manager, can be said to be nonadministrative.

Certainly, the manager, in furnishing information and advice to the council, does not assume the identity of a legislative body or become a part thereof.

█ If duties which under the charter, when performed by the manager, are administrative, they do not become legislative when performed by the department of legislative analyst.

We conclude that the powers and duties prescribed for the department of legislative analyst determine the character of that department regardless of the designation placed upon it by the ordinance defining its functions. As a department of government, it is administrative in function and, as such under the charter as it stands, must be under the supervision of the manager.

We realize that a legislative analyst, working under the supervision of the manager so as to facilitate the duties assigned to the manager by the charter, would not serve the purpose of the council insofar as concerns an independent analysis of a proposed budget or an independent analysis of the fiscal impact or feasibility of legislation proposed by the manager.

█ It is within the power of the council to employ an assistant or assistants for those purposes, and they may even designate such a person a "Legislative Analyst."

If the citizens of San Diego find it necessary to have an independent agency of government standing between the manager and the council, screening budget information and other informational material and reports submitted to the council by the manager, reviewing the performance of the various departments of city government, and initiating its own proposals for legislative action, it may be done only by amendment to the charter.

So far as the challenged ordinances would invade or duplicate duties of the manager and his employees, they should be invalidated as tending to undermine the harmony of the council/manager system of municipal government. An ordinance can no more change or limit the effect of a charter than a statute can modify a provision of the state Constitution (*Marculescu* v. *City Planning Com.*, 7 Cal.App.2d 371, 373 [46 P.2d 308]).

It might be argued that the four ordinances, in their entirety, are not invalid and that severable parts should be preserved. The parts we hold invalid so dominate the legislative scheme that the invalidity can be cured only by holding the ordinances invalid in their entirety. It is true that ordinance 11387 (new series) might be declared invalid only insofar as it adds "Legislative Analyst" to the roll of city departments. By declaring it invalid in its entirety, the list of city departments is restored to its condition prior to the enactment of the ordinance.

The judgment is affirmed insofar as it declares invalid new series ordinances 11386, 11387, 11388 and 11467, and awards costs; it is reversed insofar as it declares invalid the fully completed contract and the extension thereof pending the enactment of the ordinances. The plaintiff shall recover his costs of this appeal from City; otherwise costs are to be borne by the party incurring them.

Ault, Acting P. J., and Cologne, J., concurred.