190 Cal.App.3d 419 (1987)
235 Cal. Rptr. 477
UNITED PUBLIC EMPLOYEES, LOCAL 390/400, SEIU, AFL-CIO et al., Plaintiffs and Appellants.
v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents; LABORERS INTERNATIONAL UNION, LOCAL 261, Intervener and Appellant.
Docket No. A033767.
Court of Appeals of California, First District, Division Five.
March 19, 1987.
*420 COUNSEL
Stewart Weinberg, Van Bourg, Weinberg, Roger & Rosenfeld, Duane W. Reno and Davis & Reno for Plaintiffs and Appellants.
*421 Lynn C. Rossman and Neyhart, Anderson, Nussbaum, Reilly & Freitas for Intervener and Appellant.
Louise H. Renne, City Attorney, Philip S. Ward, Acting City Attorney, Burk E. Delventhal, Judith A. Boyajian and Jerry J. Spain, Deputy City Attorneys, for Defendants and Respondents.
OPINION
HANING, J.
Several labor organizations representing city employees (appellants)[1] brought this mandamus proceeding against the City and County of San Francisco and its Board of Supervisors alleging that the city violated the Meyers-Milias-Brown Act (MMBA) (Gov. Code, § 3500 et seq.) by declaring its intent to submit any prospective agreement between the city and appellants on fringe benefits to the voters for approval, as required by the city charter. The trial court declined to issue a writ, and we affirm.
In the latter part of 1984, appellants contacted the city demanding that it meet and confer over proposals for the establishment of dental insurance and other fringe benefits for city employees. The MMBA's "meet and confer" guidelines require public employers to "meet and confer in good faith" with representatives of recognized employee organizations concerning, inter alia, wages, hours and other terms and conditions of employment. The MMBA defines that obligation as including the duty "to exchange freely information, opinions, and proposals, and to endeavor to reach agreement...." (Gov. Code, § 3505.)
The city responded by letter that it was willing to meet and confer on all fringe benefit proposals; however, it noted that any change in fringe benefits would have to be submitted to the electorate in the form of an amendment to the San Francisco City Charter. Under the charter "the board of supervisors has no power to provide any benefits of employment except those already provided for in the charter and any addition, deletion or modification of benefits of employment shall be submitted, as a charter amendment, to the qualified electors of the city and county." (S.F. Charter, § 8.407.)[2] In *422 summary, the city agreed to meet and confer on the question of whether a charter amendment should be submitted to the voters to grant city employees additional fringe benefits and, if so, upon the language of such an amendment.
Appellants filed the instant petition in the superior court for writ of mandate, arguing that city officials had the absolute, unabridged authority under the MMBA to make decisions involving wages, hours, and other terms and conditions of employment for city employees. They asserted that the charter provision "purporting to further delegate such authority to the municipal electorate" was incompatible with the provisions of the MMBA requiring meeting and conferring with employee representatives about these decisions. They argued that "[b]ecause the Board of Supervisors is required by state policy to meet and confer in good faith and endeavor to reach agreements with recognized employee organizations over wages, hours, and other terms and conditions of employment, the San Francisco charter may not restrict the ability of the Board of Supervisors to make such agreements." After the trial court denied appellants' petition, this appeal ensued. The sole issue is whether the MMBA's "meet and confer" process is incompatible with the power of the electorate in a charter city to "reserve the right to either grant or deny" benefits of public employment. (S.F. Charter, § 8.407.)
(1) We start from the premise that the city charter "represents the supreme law of the City and County of San Francisco, subject, of course, to conflicting provisions in the United States and California Constitutions, and to preemptive state law. [Citations.]" (Harman v. City and County of San Francisco (1972) 7 Cal.3d 150, 161 [101 Cal. Rptr. 880, 496 P.2d 1248].) "Under the Constitution the charter of a city is not only the organic law of the city, but it is also a law of the state within the constitutional limitations. [Citations.]" (Hubbard v. City of San Diego (1976) 55 Cal. App.3d 380, 385 [127 Cal. Rptr. 587].) Thus, city charters not only confer powers and duties upon the governing bodies of charter cities, but also impose limitations thereon. (See, e.g., People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach (1984) 36 Cal.3d 591 [205 Cal. Rptr. 794, 685 P.2d 1145]; Taylor v. Crane (1979) 24 Cal.3d 442 [155 Cal. Rptr. 692, 595 P.2d 129]; San Francisco Fire Fighters v. City and County of San Francisco (1977) 68 Cal. App.3d 896 [137 Cal. Rptr. 607]; Hubbard v. City of San Diego, supra.) City charters are construed to permit the exercise of all powers not expressly limited by the charter or by superior state or federal law. (Taylor v. Crane, supra, at pp. 450-451.)
The California Constitution confers upon cities the unabridged right to propose charter amendments to the electorate. (Cal. Const., art. XI, § 3, subd. (b).) It also grants charter cities the direct power to determine the compensation *423 of their officers and employees. (Cal. Const., art. XI, § 5, subds. (a) and (b).) (2) However, while the amount of compensation is considered strictly a local affair and not preempted by the general law (Sonoma County Organization of Public Employees v. County of Sonoma (1979) 23 Cal.3d 296, 317 [152 Cal. Rptr. 903, 591 P.2d 1]), the procedure by which such compensation is determined is subject to the provisions of the MMBA. (People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach, supra, 36 Cal.3d at pp. 596-601.) (3) In this regard, however, statutory enactments such as the MMBA should be construed, if possible, to avoid conflict with city charters. (Building Material & Construction Teamsters' Union, Local 216 v. Farrell (1986) 41 Cal.3d 651, 665 [224 Cal. Rptr. 688, 715 P.2d 648]; People ex rel. Seal Beach Police Officers Assn., supra, at pp. 596-601.)
Appellants contend that the MMBA manifests a legislative intent to preclude the use of local charter amendments to grant, deny or modify benefits to public employees. The MMBA defines the rights of public employees in California. It protects the right of such employees "to form, join, and participate in the activities of employee organizations ... for the purpose of representation on all matters of employer-employee relations." (Gov. Code, § 3502.) It also requires public employers to meet and confer in good faith with employee representatives on all issues within the scope of representation. (Gov. Code, § 3505.) The meet-and-confer process is intended by the Legislature to "promote full communication between public employers and their employees by providing a reasonable method of resolving disputes...." (Gov. Code, § 3500.) Parties in the meet-and-confer process are to "endeavor to reach agreement on matters within the scope of representation...." (Gov. Code, § 3505.) Agreement, if reached, is to be reduced to a written memorandum of understanding and presented to the governing body "for determination." (Gov. Code, § 3505.1.) (4) Any agreement reached after meeting and conferring "shall not be binding" on the employer. (Gov. Code, § 3505.1.) In other words, a governing body has no commitment to accept agreements negotiated by its representatives. The MMBA does not prescribe the manner in which an agreement between a local government and an employee organization should be put into effect  in fact, it is silent as to what occurs after a nonbinding memorandum of understanding is submitted to the governing body "for determination." (See generally, Grodin, Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts (1972) 23 Hastings L.J. 719.) (5) Nothing in the express language of the MMBA prevents the voters of a charter city, such as San Francisco, from adopting a charter provision requiring voter approval of any "addition, deletion or modification" of city employee benefits. (S.F. Charter, § 8.407.)
The decision in People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach, supra, 36 Cal.3d 591, appears to dispel the claim that the obligations *424 imposed on local governments by the MMBA are incompatible with the charter provision at issue herein. In Seal Beach the city council of a charter city had placed charter amendments on the municipal ballot which affected the terms and conditions of public employment. The Supreme Court held that a charter city must meet and confer with representatives of city employees before proposing such amendments to its charter. However, it concluded "that the meet-and-confer requirement of [Government Code] section 3505 is compatible with the city council's constitutional power to propose charter amendments." (Id., at p. 601.)
In spite of the Supreme Court's pronouncement, appellants infer an intention on the part of the drafters of the MMBA to preempt the power of the city's electorate to regulate its employment practices through the charter amendment process. Appellants cite Government Code section 3505.1, which provides: "If agreement is reached by the representatives of the public agency and a recognized employee organization or recognized employee organizations, they shall jointly prepare a written memorandum of such understanding, which shall not be binding, and present it to the governing body or its statutory representative for determination." In Glendale City Employees' Assn., Inc. v. City of Glendale (1975) 15 Cal.3d 328 [124 Cal. Rptr. 513, 540 P.2d 609], the Supreme Court interpreted this provision as implying that an agreement must be binding once approved by the governing body: "This statutory structure necessarily implies that an agreement, once approved by the agency, will be binding. The very alternative prescribed by the statute  that the memorandum `shall not be binding' except upon presentation `to the governing body ... for determination,'  manifests that favorable `determination' engenders a binding agreement." (Id., at p. 336.) Appellants single out this quotation and argue that the statutory scheme of the MMBA does not "contemplate that after a [memorandum of understanding] is ratified by the City's governing body, that [the memorandum of understanding] will have to be subjected to the political process via charter amendment."
In addressing appellants' argument, it is important to note the context in which Glendale arose. The Glendale City Council passed a motion approving a memorandum of understanding negotiated between a city representative and a representative of the city employees' association. The city later drafted a salary ordinance which was challenged on the ground that it established salaries at levels lower than those agreed to by the parties in the earlier memorandum of understanding. Despite this objection, the city council passed the salary ordinance incorporating the lower salary levels. The Supreme Court noted that the city council was under no duty to approve the memorandum of understanding; but once the memorandum of understanding was adopted, the MMBA imposed a duty on the city to abide by its provisions.
*425 It is significant that the Glendale case did not involve a charter provision requiring that any agreement on salaries or fringe benefits be submitted to and approved by the city's electorate. By contrast, the city council in Glendale had full legal authority to enter into a binding memorandum of understanding with the city employees' association and to adopt an ordinance implementing its terms. However, in the instant case, the San Francisco Board of Supervisors "has no power to provide any benefits of employment...." (S.F. Charter, § 8.407.) As we have pointed out, the charter represents "the supreme law of the City and County of San Francisco." (Harman v. City and County of San Francisco, supra, 7 Cal.3d at p. 161.) Here, the charter expressly delegates the final decisionmaking authority to the electorate. "And patently, the City's Mayor and the board of supervisors, whose authority is derived from the Charter may not reasonably, or as a matter of law, have authority to do an act, or make an agreement, in derogation of the Charter." (San Francisco Fire Fighters v. City and County of San Francisco (1977) 68 Cal. App.3d 896, 902 [137 Cal. Rptr. 607]; see also East Bay Mun. Employees Union v. County of Alameda (1970) 3 Cal. App.3d 578, 584 [83 Cal. Rptr. 503]; Social Workers Union Local 535 v. County of Los Angeles (1969) 270 Cal. App.2d 65, 76-77 [75 Cal. Rptr. 566].) Nothing in Glendale, or any other case for that matter, compels a different result.
Finally, we disagree with appellants' assertion that the charter provision in question is in direct conflict with the MMBA because it "undermines the very purpose for which MMBA was passed by the Legislature." The essence of appellants' position is that the inability of the Board of Supervisors to enter into a final binding and enforceable memorandum of understanding "emasculates the negotiations process" and "makes such negotiations meaningless and wholly nonproductive."
We agree that the election requirement encumbers the bargaining process and may be a much more expensive adjunct to meet-and-confer negotiations than a simple submission to the board of supervisors. However, the electorate has declined to grant the board this authority, and we do not rule on the wisdom of charter provisions, that matter being entrusted to the voters.
It should be observed that the purpose of the MMBA is to "promote full communication between public employers and their employees...." (Gov. Code, § 3500.) This objective is served by requiring the public employer to meet and confer with employee representatives before proposing a charter amendment which, as here, concerns the terms and conditions of public employment. (See People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach, supra, 36 Cal.3d 591.) We fail to see how this meet-and-confer process is rendered "meaningless" by the reservation of power in the city's *426 electorate to approve, in the form of a charter amendment, any agreement that might be reached. (S.F. Charter, § 8.407.) The city has recognized its duty to meet and confer on the subject of fringe benefits, thereby "guaranteeing public employees an opportunity to have their views seriously considered...." (Los Angeles County Civil Service Com. v. Superior Court (1978) 23 Cal.3d 55, 63 [151 Cal. Rptr. 547, 588 P.2d 249].) If an agreement is reached by the parties, the city has stated its intention to submit the terms of that agreement to the voters. Given the overall picture, both appellants and the city have a genuine incentive to seriously "attempt to resolve differences and reach a common ground [citation]." (Placentia Fire Fighters v. City of Placentia (1976) 57 Cal. App.3d 9, 25 [129 Cal. Rptr. 126].) Thus, the duty of the city to "meet and confer in good faith" on the subject of employee benefits is in no way infringed by the electorate's reservation of authority to approve any results of the bargaining process. (Gov. Code, § 3505.)
We conclude there is nothing in the language or purpose of the MMBA which preempts the provisions of the San Francisco Charter granting the electorate the right to approve "any addition, deletion or modification of benefits of employment...." (S.F. Charter, § 8.407.) In asserting a legislative intent to preclude the electorate from controlling the authority of its officials to grant or deny employment benefits, appellants read proscriptions into the legislative scheme which are not there.
In light of our resolution of this issue, we need not discuss appellants' remaining contentions concerning attorney fees under Code of Civil Procedure section 1021.5.
Affirmed.
Low, P.J., and King, J., concurred.
A petition for a rehearing was denied April 7, 1987, and the petition of all appellants for review by the Supreme Court was denied June 2, 1987.
NOTES
[1] These organizations include: United Public Employees, Local 390/400, SEIU, AFL-CIO; Social Services Union. Local 535. AFL-CIO; Hospital and Institutional Workers Union, Local 250, SEIU, AFL-CIO; International Federation of Professional and Technical Engineers, Local 21, AFL-CIO; San Francisco Federation of Teachers, Local 61, AFT, AFL-CIO; intervener Laborers International Union, Local 261.
[2] San Francisco Charter section 8.407 was adopted in the general election of November 1976, and has been in effect since that date.