Filed 9/24/14  San Francisco Police Off. Assn. v. City and County of San Francisco CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAN FRANCISCO POLICE OFFICERS' ASSOCIATION, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO et al., <br><br> Defendants and Respondents. | A137684 <br><br> (City and County of San Francisco Super. Ct. No. CPF-10-510396) |

The Meyers-Milias-Brown Act (MMBA; Gov. Code, § 3500, et. seq.) governs labor relations between the San Francisco Police Officers' Association (SFPOA) and the City and County of San Francisco (the City).  By its lawsuit, SFPOA seeks to set aside section A8.590-5(h) of the Charter of the City and County of San Francisco (Charter) as in conflict or inconsistent with the provisions and policies and purposes of the MMBA.  After an independent review, we agree with the trial court that Charter section A8.590-5(h) is a reasonable regulation that does not violate the provisions or the policies and purposes of the MMBA.  Accordingly, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff and appellant SFPOA is a recognized employee organization, exclusively representing about 2,000 sworn law enforcement officers in the police department for the City.  Defendants and respondents are the City and its Director of Human Resources Micki Callahan.

1

The Charter requires the City to bargain with SFPOA in good faith regarding disputes pertaining to wages, hours, benefits or other terms and conditions of employment. (Charter § A8.590-5(a).) Upon the declaration of an impasse, the parties must submit the dispute to "a three-member board of arbitrators" (arbitration board). (Charter § A8.590-5(a).) No later than January 20 of any year in which bargaining on an agreement takes place, the parties shall each select one member of the arbitration board and agree upon a chairperson. (Charter § A8.590-5(b).) In the event the parties do not reach an agreement before the conclusion of the arbitration hearings, each party shall submit a last offer of settlement on each of the remaining disputed issues, and the arbitration board shall decide each issue by majority vote pursuant to a list of specific criteria. (Charter § A8.590-5(d).) Except under certain circumstances not pertinent to our decision, the arbitration decision "shall supersede any and all relevant formulas, procedures and provisions of this Charter relating to wages, hours, benefits and terms and conditions of employment; and it shall be final and binding on the parties to the dispute, including the City and County of San Francisco, its commissions, departments, officers and employees. No other actions or procedural steps to confirm or approve the decision of the arbitration board shall be permitted or required; provided, however, that the City and County of San Francisco, its designated officers, employees and representatives and the recognized employee organization involved in the dispute shall take whatever action that is necessary to carry out and effectuate the decision of the arbitration board." (Charter § A8.590-5(e).) "An agreement that is submitted to the Board of Supervisors for approval on or before May 15 or a decision of the arbitration board that is submitted to the Board of Supervisors on or before May 10, or May 15 if the parties waive the 10-day period between the board's decision and public disclosure of the decision, shall be effective on July 1 of the same calendar year upon adoption by the Board of Supervisors. An agreement submitted to the Board of Supervisors after May 15, or a decision of the arbitration board that is submitted to the Board of Supervisors after May 10, or May 15, if the parties waive the 10-day period between the board's decision and public disclosure of the decision, shall become effective no earlier than July 1 of the next calendar year upon

2

approval of the Board of Supervisors. But an agreement reached during the term of an existing memorandum of understanding that results in a net reduction, or results in no net increase, in the cost to the City, during the current fiscal year, of existing economic provisions in the existing memorandum of understanding may become effective at any time upon approval by the Board of Supervisors. Economic provisions include, but are not limited to, wages, premium pay rates, overtime, any employer pickup of the employees' retirement contribution, paid time off, and other compensation." (Charter § A8.590-5(h).)

SFPOA filed a combined petition for writ of mandate and complaint for declaratory relief, seeking to set aside Charter section A8.590-5(h), which sets deadlines for the submission of agreements and arbitration awards and determines the effective dates of such agreements and arbitration awards. According to SFPOA, Charter section A8.590-5(h) "unlawfully interferes with and restricts the parties and their rights and obligations to meet and confer in good faith in all matters within the scope of representation" in violation of the MMBA. The City filed written opposition. After considering the parties' papers and oral arguments, the trial court ruled Charter section A8.590-5(h) "[was] reasonable and consistent" with the MMBA. SFPOA's timely appeal ensued.[1]

## DISCUSSION

The sole issue raised on this appeal is whether Charter section A8.590-5(h) either violates a specific provision of the MMBA or is clearly inconsistent with the MMBA's stated policies and purposes. "As the matter is a question of law, we are not bound by evidence on the question presented [in the trial court] or by [that] court's

---

[1] Despite the absence of a separate formal judgment, the trial court's November 26, 2012, order effectively disposed of both the first cause of action (writ of mandate) and second cause of action (declaratory relief) in the combined petition and complaint. "In these circumstances, we treat the trial court's order . . . as the equivalent of a final judgment on all of these causes of action. [Citation.] As the appeal from this order was timely filed, we may consider the merits of the issues that [SFPOA] raise[s]." (*Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1074.)

3

interpretation[s]." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.) [2] Instead, we independently consider whether SFPOA has met its burden of showing that Charter section A8.590-5(h) should be set aside because it is in conflict with the provisions or the policies and purposes of the MMBA. As we now discuss, we conclude SFPOA has failed to make the necessary showing to justify setting aside Charter section A8.590-5(h).

" 'The MMBA has two stated purposes: (1) to promote full communication between public employers and employees, and (2) to improve personnel management and employer-employee relations. ([Gov. Code,] § 3500. [[3]]) To effect these goals the act gives local government employees the right to organize collectively and to be represented by employee organizations ([Gov. Code,] § 3502), and obligates employers to bargain with employee representatives about matters that fall within the "scope of representation" ([Gov. Code,] §§ 3504.5, 3505).' [Citation.] The duty to meet and confer in good faith is limited to matters within the 'scope of representation': the public employer and recognized employee organization have a 'mutual obligation personally to meet and

---

[2]     SFPOA's reliance on statements made by the trial court at oral argument is therefore unavailing.

[3]     Government Code section 3500, subdivision (a), reads in full: "(a) It is the purpose of this chapter to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations. It is also the purpose of this chapter to promote the improvement of personnel management and employer-employee relations within the various public agencies in the State of California by providing a uniform basis for recognizing the right of public employees to join organizations of their own choice and be represented by those organizations in their employment relationships with public agencies. Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances, and rules of local public agencies that establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations nor is it intended that this chapter be binding upon those public agencies that provide procedures for the administration of employer-employee relations in accordance with the provisions of this chapter. This chapter is intended, instead, to strengthen merit, civil service and other methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public agencies by which they are employed."

4

confer promptly upon request by either party . . . and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the public agency of its final budget for the ensuing year.' ([Gov. Code,] § 3505.)" (*Claremont Police Officers Assn. v. City of Claremont* (2006) 39 Cal.4th 623, 630; see *Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 781 (*VFRR*); *United Public Employees v. City and County of San Francisco* (1987) 190 Cal.App.3d 419, 423 (*United Public Employees*).)

Although the MMBA sets forth certain procedures for the administration of labor relations,"[a] public agency may adopt reasonable rules and regulations" concerning "[a]dditional procedures for the resolutions of disputes involving wages, hours and other terms and conditions of employment, " subject to the proviso that "[e]mployees and employee organizations shall be able to challenge a rule or regulation of a public agency as a violation of [the MMBA]." (Gov. Code, § 3507, subds. (a)(5), (d).) It is well settled that "[t]he scope of local government rulemaking power under Government Code section 3507 is limited by the policies and purposes of the MMBA. 'Although the Legislature did not intend to preempt all aspects of labor relations in the public sector, . . . [t]he power reserved to local agencies to adopt rules and regulations was intended to permit supplementary local regulations which are "consistent with, and effectuate the declared purposes of, the statute as a whole." [Citation.]' (Fn. omitted.)" (*International Brotherhood of Electrical Workers v. City of Gridley* (1983) 34 Cal.3d 191, 202 (*IBEW*), quoting from *Huntington Beach Police Officers' Assn. v. City of Huntington Beach* (1976) 58 Cal.App.3d 492, 501-502 (*Huntington Beach Police Officers' Assn.*).)

SFPOA contends Charter section A8.590-5(h) goes "beyond <u>mere procedures</u> for the administration of employer-employee relations, or the resolution of disputes regarding wages, hours and terms and conditions of employment, and intrude[s] into the <u>substantive results</u> of such bargaining." (Underscore in original.) We disagree. To the extent Charter section A8.590-5(h) sets deadlines for the submission of agreements and arbitration awards and determines the effective dates of agreements or arbitration awards, it is not in direct conflict with any specific provision in the MMBA. (See *United Public*

5

*Employees, supra,* 190 Cal.App.3d at p. 423 [the MMBA does not "prescribe the manner in which an agreement between a local government and an employee organization should be put into effect . . . ."]; [4] *East Bay Mun. Employees Union v. County of Alameda* (1970) 3 Cal.App.3d 578, 584 [the MMBA does not "precisely" define "the nature and scope of the contract that can be entered into by the parties"].)  Additionally, Charter section A8.590-5(h) does not unlawfully interfere or conflict with the MMBA's mandates concerning the scope of representation (Gov. Code, § 3504) and the meet and confer process (Gov. Code, § 3505). [5]  According to SFPOA, Charter section A8.590-5(h) truncates the bargaining process and thereby modifies the scope of representation by removing mandatory subjects of bargaining – the timing and payment of wages, and their retroactivity – from the bargaining process.  However, Charter section A8.590-5(h) does not contain either a time referent for the commencement of collective bargaining or any language precluding the parties from bargaining on any issue.  SFPOA is free at any time after the effective date of an agreement or arbitration award in any calendar year to

---

[4]  SFPOA argues that *United Public Employees, supra,* 190 Cal.App.3d 419, is called into doubt by *VFFR*, *supra*, 8 Cal.4th 623.  However, we see nothing in *VFRR* that overrules that portion of *United Public Employees* that we rely on, namely, that the MMBA does not regulate the manner in which collective bargaining agreements are to be given effect by a charter city and county like San Francisco.  (*United Public Employees, supra*, 190 Cal.App.3d at p. 423.)  Consequently, we find unavailing SFPOA's contention that "if the question at issue in *United Public Employees* were presented to the Supreme Court today, a different result would obtain."

[5]  Government Code section 3504 provides, in pertinent part, that "[t]he scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment . . . ."  Government Code section 3505 defines "[m]eet and confer in good faith" to mean "that a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer promptly upon request by either party and continue for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the public agency of its final budget for the ensuing year.  The process should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation, or ordinance, or when such procedures are utilized by mutual consent."

request a meet and confer session to begin bargaining anew in sufficient time to meet the May deadlines in the ensuing calendar year. If there is no agreement or arbitration award before the May deadlines in any calendar year, the charter section does not preclude the parties from bargaining and reaching agreement during the next bargaining cycle to provide for a wage or other financial benefit increase retroactive to any date. Thus, we see nothing in Charter section A8.590-5(h) that impinges on the scope of representation or the meet and confer process as mandated by the MMBA. Nor are we persuaded by SFPOA's contention that Charter section A8.590-5(h)'s determination of the effective dates of agreements and arbitration awards allows the City's "budgetary procedures" to "trump the duty to bargain created by the" MMBA.[6] The MMBA allows for a public agency's consideration of "the practical realities" of its budgetary cycle in its negotiations with represented employees. (*Dublin Professional Firefighters, Local 1885 v. Valley Community Services Dist.* (1975) 45 Cal.App.3d 116, 118 (*Dublin Professional Firefighters*); see Gov. Code, § 3505 [parties are "to endeavor to reach agreement . . . prior to the adoption by the public agency of its final budget for the ensuing year . . ."].)[7]

---

[6] By its argument, the SFPOA effectively asks us to require the City to return to the situation that existed before the enactment of Charter section A8.590-5(h) – " 'most of the time,' " the City and SFPOA did not finalize their memorandum of understanding "by a timeline that applied to miscellaneous employees of the City," and "[i]n some cases," the memorandum of understanding was not submitted "until months after the beginning of the fiscal year that the [memorandum of understanding] covered[, and] [t]o the extent that th[e] [memorandum of understanding] provided for compensation increases, such increases were retroactive to the beginning of the [memorandum of understanding's] term."

[7] SFPOA's reliance on the following cases is misplaced: *Huntington Beach Police Officers' Assn., supra,* 58 Cal.App.3d 492, concerned a situation in which the public agency refused to bargain on a specific topic that purportedly concerned "a nonnegotiable prerogative of management" (*id*. at p. 503); *Dublin Professional Firefighters, supra*, 45 Cal.App.3d 116, concerned a situation in which the public agency refused to bargain on a specific issue because the public agency had already formulated its budget (*id*. at p. 118); and in *IBEW, supra*, 34 Cal.3d 191, 202, and *Los Angeles County Federation of Labor v. County of Los Angele*s (1984) 160 Cal.App.3d 905, 907-908, the courts struck down ordinances that precluded collective bargaining and/or granting increases in employee financial benefits as sanctions to deter employee or union misconduct. Unlike the

We also reject SFPOA's argument that Charter section A8.590-5(h) unlawfully discriminates between unions solely on the basis of the timing of their exhaustion of the collective bargaining process with the City.[8]  SFPOA complains that one union may be able to implement its agreement or an arbitration award on July 1 of the year in which the bargaining occurs, but another union may not do so only because through no fault of the union it has failed to exhaust the bargaining process by the May deadlines.  However, we conclude the potential for discriminatory enforcement is purely speculative in nature. Charter section A8.590-5(h) does not create a discriminatory classification among employees represented by various unions or otherwise treat employees represented by SFPOA differently from employees represented by other unions.  Unlike the situations in *Campbell Municipal Employees Assn. v. City of Campbell* (1982) 131 Cal.App.3d 416, 420, 422, 425 and *Los Angeles County Employees Assn. v. County of Los Angeles* (1985) 168 Cal.App.3d 683, 685, 689, cited by SFPOA, we are not now confronted with the situation where the City has in fact refused to grant employees represented by SFPOA the same benefits that have been granted to other city employees solely based on the status of the parties' negotiations and inability to reach an agreement or secure an arbitration award by the May deadlines.  Thus, we reject SFPOA's claim that Charter section A8.590-5(h) must be set aside because it may be enforced in a discriminatory manner.

Given the narrow issue before us and after our independent review, we agree with the trial court that Charter section A8.590-5(h) is a reasonable regulation, which is neither in direct conflict with the provisions of the MMBA nor "inconsistent . . . with the stated purposes of the MMBA: to encourage communication and improve relations between local governments and their employees."  (*IBEW, supra*, 34 Cal.3d at p. 197.)

---

aforecited cases, Charter section A8.590-5(h) does not actually or implicitly attempt to bypass collective bargaining either as envisioned by the MMBA or as a sanction for employee or union misconduct.

[8]      Government Code section 3506 provides that "[p]ublic agencies and employee organizations shall not interfere with, intimidate, restrain, coerce or discriminate against public employees because of their exercise of their rights under Section 3502 [employees' right to join or refuse to join employee organizations]."

SFPOA "read[s] proscriptions into the [MMBA] which are not there."  (*United Public Employees, supra,* 190 Cal.App.3d at p. 426.)

## DISPOSITION

The order filed on November 26, 2012, is affirmed.  Defendants and respondents City and County of San Francisco and Micki Callahan are awarded costs on appeal.


_____
Jenkins, J.


We concur:


_____
Pollak, Acting P. J.


_____
Siggins, J.