[Civ. No. 17245. Fourth Dist., Div. Two. June 9, 1977.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al.,
Plaintiffs and Respondents, v.
TRONA JOINT UNIFIED SCHOOL DISTRICT,
Defendant and Appellant.

## COUNSEL

M. Crane Kitchel, County Counsel, and Craig S. Jordan, Deputy County Counsel, for Defendant and Appellant.

Robert L. Blake, William D. Dobson, Madalyn J. Frazzini, Patrick S. McGovern and Charles L. Morrone for Plaintiffs and Respondent.

## OPINION

**THE COURT.**—The California School Employees Association (hereinafter Association) sought a writ of mandate in the Superior Court of San Bernardino County to compel the Trona Joint Unified School District (hereinafter District) to grant two of the Association's members, Elva

Vigen and Ruby Moses, certain benefits as classified employees.[1] After a contested hearing on the petition, the trial court ruled in favor of the Association. Findings of fact and conclusions of law were entered and the writ issued. The District appeals. We reverse.

█ The single question presented on this appeal concerns the proper method of computing the time interval specified in Education Code section 13581.[2] In pertinent part, that section provides: "The governing board of any school district shall employ persons for positions not requiring certification qualifications. . . . The employees and positions shall be known as the classified service. Substitute and short-term employees, employed and paid for less than 75 percent of a school year, shall not be a part of the classified service. . . . 'Seventy-five percent of a school year' means 195 working days, including holidays, sick leave, vacation and other leaves of absences, irrespective of number of hours worked per day." The court below concluded that Saturdays and Sundays should be counted to determine whether the 195-day requirement had been met. The District contends this was an erroneous interpretation of the statute.

Chapter 3 of division 10 of the Education Code (§ 13580 et seq.) contains a comprehensive plan for the classified service.[3] Employees in the classified service enjoy a number of benefits guaranteed by statute, including paid holidays (§ 13656), paid vacation (§ 13651.7), sick leave (§ 13651.1), increased pay for overtime (§ 13590.2), job security (§ 13583), seniority (§ 13737), and unemployment insurance coverage (§ 13658). Benefits for substitute and short-term employees, who are excluded from the classified service by section 13581, are largely determined by the governing board of the district. (See §§ 13593, 13651.7.) In the case at bench, it is apparently undisputed that the District provides few if any of the above-mentioned benefits to its substitute employees.

[1]Concerning the Association's standing to bring suit on behalf of its members, see Education Code section 13084.5 and *California Sch. Employees Assn.* v. *Willits Unified Sch. Dist.*, 243 Cal.App.2d 776, 779-780 [52 Cal.Rptr. 765].

[2]The entire Education Code has been repealed and reenacted with new section numbers, effective April 30, 1977. (Stats. 1976, ch. 1010 [Deering's Special Pamphlet, 1977].) For convenience, we continue to use the old section numbers, as they were at the time of the trial below.

[3]Jobs in the classified service apparently include custodians, bus drivers, cafeteria workers, clerical staff, some instructional aids, and other nonteaching and nonadministrative *positions.*

The instant dispute grows out of the facts which follow.

In October 1973, a regular classified employee of the District resigned. **He had worked an eight-hour night shift as custodian in the gymnasium,** woodshop-metalshop, auto-mechanic shop, home economics department and high school offices. The District desired to replace the employee with a man, but was unable to hire one for the position.

Elva Vigen and Ruby Moses were employed by the District as substitute employees. In October 1973 they began performing the duties of the employee who resigned, each working a 5-hour shift. Between July 1, 1973, and June 30, 1974, Elva Vigen performed services for the District on 161 days. During the same period, Ruby Moses actually worked 158 days.

During the summer recess in 1974, Ruby Moses became ill and has not been able to work since that time.

After the summer recess in 1974, Elva Vigen continued doing the same work she had done the previous year. The District hired a man for the night custodial position in November 1974, but he resigned after a short time. During the 1974-1975 year Elva Vigen actually worked 153 days. The District still considered her a substitute employee.

At the outset of the 1975-1976 school year, the District abandoned its search for a man to fill the night custodial position. The position was given to Elva Vigen, and she was designated a classified employee.

The pertinent findings state:

"It is true that Petitioners Elva N. Vigen and Ruby Moses worked as substitute employees for more than 75% of the 1973-1974 school year, that is, in excess of 195 working days including Saturdays, Sundays, holidays, sick leave, vacation, and leaves of absence.

"It is true that Petitioners Elva N. Vigen and Ruby Moses became regular permanent classified employees of Respondent School District from and after the completion of 195 working days including Saturdays, Sundays, holidays, sick leave, vacation, and leaves of absence, during the 1973-1974 school year pursuant to Education Code Section 13581 and thus thereafter entitled to all of the employee benefits provided for all other members of the classified service."

As the District argues, one would expect the figure "195 working days" to bear some reasonable relation to the phrase it purports to define, "75 percent of a school year." In the Education Code, "school year" is defined as the 12-month period from July 1 to June 30.[4] (§ 5101.) Multiplying the number of weeks in a school year (52) by the normal number of working days in a week (5)[5] one arrives at the number 260. Seventy-five percent of 260 is exactly 195. Thus 195 days is 75 percent of the total number of normal working days in a school year. This is a persuasive indication that the phrase "195 working days" was intended to exclude nonworking Saturdays and Sundays.

Next, we note that the word "working" in the phrase "195 working days" may be given significance by reference to the standard five-day work week. (See fn. 5, *ante.*) If nonworking Saturdays and Sundays are included, however, the word "working" becomes an odd and confusing surplusage.

Furthermore, section 13581 states that substitute employees who are "employed *and paid* for less than 75 percent of the school year shall not be a part of the classified service." (Italics added.) Employees in the classified service are not paid for nonworking Saturdays and Sundays, and neither are substitute employees.

Finally, inclusion of Saturdays and Sundays would create perplexing computation problems. Counting the weekend only when the employee works on either the preceding Friday or following Monday (see § 13656) would yield arbitrary results, inasmuch as an employee who, in a given week, worked only on a Wednesday would be credited with one day, while an employee who worked on a Monday or Friday would be credited with three days. Crediting every substitute employee for every Saturday and Sunday in the entire year would result in an automatic credit of 104 days, or over half of the 195-day total. It seems highly unlikely that such a generous credit was intended. Other possible solutions, such as crediting only Saturdays and Sundays for weeks in which the employee worked at least three days, or allowing an extra two days credit for every five days worked, regardless of the calendar weeks involved, would go beyond the scope of statutory interpretation and enter the sphere of legislation. From the record we can find no indication

---

[4] To designate the period during which the schools are in session, the code uses the designations "school term" (§ 5152) or "academic year" (§§ 5554, 13580.5).

[5] The standard work week is 40 hours. (§ 13590.1.) This is normally five days of eight hours (§ 13590.5), but may consist of four days of ten hours (§ 13590.6).

that either the Association or the court below has addressed these computation questions.

The Association argues that exclusion of Saturdays and Sundays will yield harsh results because the majority of classified positions actually require services to be performed on about 200 or fewer days per year.[6] Thus the 195-day requirement is, for the majority of substitute employees, actually a 95-100 percent requirement rather than a 75 percent requirement. Thus it will be virtually impossible for a substitute employee to qualify for the classified service if only the days actually worked are counted.

This argument is fortified by examination of parallel provisions of the Education Code. For example, section 13336.5 provides, in pertinent part: "Any [certificated] employee classified as a substitute or temporary employee, who serves during one school year for at least 75 percent of the number of days the regular schools of the district were maintained in such school year and has performed the duties normally required of a certificated employee of the school district, shall be deemed to have served a complete school year as a probationary employee if employed as a probationary employee for the following school year." (See also, §§ 13328, 13328.5, 13329.)

Construing section 13336.5, one court has stated: "The obvious purpose of the statute is to prevent school boards and administrators from abusing their discretion in hiring substitute teachers so as to circumvent the tenure rights of teachers." (*Centinela Valley Secondary Teachers Assn.* v. *Centinela Valley Union High School District,* 37 Cal.App.3d 35, 38 [112 Cal.Rptr. 27]; see also *Vittal* v. *Long Beach Unified Sch. Dist.,* 8 Cal.App.3d 112, 120-121 [87 Cal.Rptr. 319].)

One would expect that the statute under consideration, section 13581, would have a similar purpose. Yet under the construction urged by the District it is difficult to see how this purpose, or indeed any other purpose, is served by the 195-day limitation. On the other hand, section 13336.5 illustrates that when the Legislature means that a substitute employee must work 75 percent of the days worked by a regular, fulltime

---

[6]We have been furnished with no statistics concerning the number of working days per year for the various positions in the classified service. One would assume that the percentage of classified employees working year-round would vary from district to district according to the availability of summer programs, but that state-wide the majority of classified employees work substantially less than 12 months per year.

employee, appropriate language is readily available to state this meaning clearly.

Although the Association's argument has considerable attraction, it must fail in light of the insuperable problems of construction previously indicated. Nor are we persuaded by the Association's alternative argument, that Saturdays and Sundays are holidays because of the language of section 5201 as it read at the time when section 13581 was first enacted.[7] In general parlance, Saturdays and Sundays are not considered holidays and this ordinary meaning should be followed unless a different meaning was clearly intended. Section 5201 could hardly be described as a clear indication that the Legislature intended the word "holidays," as used in many and various sections throughout the Education Code, to include Saturdays and Sundays. We conclude that section 13581 is not susceptible to the interpretation urged by the Association and adopted by the court below.

As it is apparently uncontested that if Saturdays and Sundays are not included the 195-day requirement was not met by either of the employees involved in this action, the District is entitled to judgment.

The judgment is reversed with directions to enter judgment in favor of defendant Trona Joint Unified School District.

---

[7]Section 5201 then read: "Except as otherwise provided the public school shall continue in session or close on holidays as follows: (a) The public schools shall close on Saturday, Sunday, January 1st, February 12th, . . . ."

Section 5201 was later amended to read: "Except as otherwise provided the public schools shall close on Saturdays and Sundays, and shall continue in session or close on specified holidays as follows: . . . ."