[No. A039294. First Dist., Div. Two. Apr. 7, 1989.]

FRANKIE EVANS et al., Plaintiffs and Appellants, v.
SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al.,
Defendants and Respondents.

COUNSEL

Brad Seligman, Nancy Lowenthal and Farnsworth, Saperstein & Seligman for Plaintiffs and Appellants.

Peter A. Janiak, Madalyn J. Frazzinni, E. Luis Saenz, Maureen C. Whelan, William C. Heath, Harry J. Gibbons, Jr., and Marci B. Seville as Amici Curiae on behalf of Plaintiffs and Appellants.

Louise H. Renne, City Attorney, Kimberly A. Reily, Chief Deputy City Attorney, and Dan Siegel, Deputy City Attorney, for Defendants and Respondents.

OPINION

**SMITH, J.**—Petitioners and appellants filed the present action on behalf of themselves and some 2,400 noncertificated employees of the San Francisco Unified School District (SFUSD) who serve in the capacity of paraprofessionals, commonly known as classroom aides, seeking a writ of mandate which would grant them civil service status under the San Francisco City Charter.

Education Code section 45318 provides, in effect, that all noncertificated employees of the SFUSD shall be granted all rights under the merit system of the San Francisco City Charter. However, a subsequent amendment to the charter itself, section 8.300(a)(2), excludes from that same system "all employees of the . . . District who serve in the capacity of paraprofessionals [classroom aides]." The question before this court is whether or not the state statute preempts the city charter provision. (All section 8.300 references herein are to the San Francisco City Charter.)

BACKGROUND

*The Enactment of Section 45318*

In early times, San Francisco School District personnel were employees of the City of San Francisco (City) under the civil service provisions of the city charter. Since the adoption of article IX, section 14 of the California

Constitution in 1926 and the predecessors to current Education Code[1] section 35010, the Legislature required that all school districts be governed by their own boards of trustees. (See generally *Grigsby* v. *King* (1927) 202 Cal. 299, 304-306 [260 P. 789]; § 35160 et seq.)

In 1935 the Legislature created a comprehensive scheme of job protection for school employees not possessing certification qualifications, i.e. "classified" or noncertificated employees. (Stats. 1935, ch. 618, § 1, p. 1745 et seq.; see *California Sch. Employees Assn.* v. *Trona Joint Unified Sch. Dist.* (1977) 70 Cal.App.3d 592, 594 [138 Cal.Rptr. 852].) However, this legislation excluded from its scope school districts lying wholly within the boundaries of a city or city and county and which had their own merit system of employment. (Stats. 1935, *op. cit. supra*, § 5.792 at p. 1745.) San Francisco has such a district.

These events created some doubt and confusion among SFUSD noncertificated employees as to whether they had a vested right to continued civil service status under the city charter or could lose that status by a court decision or action of the State Board of Education.

It was against this background that Assembly Bill No. 1488 (now section 45318), was passed and signed into law. Introduced at the request of the City's board of education and supported by its board of supervisors and civil service association, the statute provides that in all school districts coterminous with the boundaries of a city and county (a description satisfied uniquely by San Francisco), noncertificated employees "shall be employed" pursuant to the city and county's merit system of employment, "*and shall, in all respects, be subject to, and have all rights granted by, such provisions. . . .*" (Italics added.)[2] According to a letter to Governor Warren from the Civil Service Association of San Francisco, the legislation was introduced "to protect the civil service rights of the non certificated employees of our Department of Education, whose civil service status has been in some doubt for over twenty years." Another letter to the Governor from the State Superintendent of Public Instruction stated that the bill's purpose was to "affirm and make certain the present control of the Civil Service Commission of the City and County of San Francisco over those employees of

---

[1] Unless otherwise indicated, all further state statutory references are to the Education Code.

[2] The full text of section 45318 reads as follows: "In every school district coterminous with the boundaries of a city and county, employees not employed in positions requiring certification qualifications shall be employed, if the city and county has a charter providing for a merit system of employment, pursuant to the provisions of such charter providing for such system and shall, in all respects, be subject to, and have all rights granted by, such provisions; provided, however, that the governing board of the school district shall have the right to fix the duties of all of its noncertificated employees."

the San Francisco Unified School District who are not employed in positions requiring certification qualifications."

### The Passage of Proposition J

From 1945 until 1973, noncertificated employees of the SFUSD enjoyed civil service status. However, over the years classroom aides, almost all of whom worked part-time, grew to comprise a significant part of the noncertificated work force, and their continued civil service status became a severe burden on the civil service commission's ability to recruit and retain these employees. As a result of these concerns, Proposition J, a proposed amendment to city charter section 8.300, was placed on the ballot for the general municipal election of November 6, 1973. The effect of the amendment was to guarantee retention of civil service status for all paraprofessionals already employed by the SFUSD (a so-called "grandfather" clause), while exempting paraprofessionals from the civil service selection process in the future.

No argument against Proposition J was submitted and it was passed by the voters. Hence, section 8.300(a)(2) became part of the city charter as of December 31, 1973.[3]

At the time of the filing of this action, there were approximately 2,400 paraprofessionals employed by the SFUSD. By virtue of the 1973 grandfather clause 40 paraprofessionals have full civil service status. As the result of a collective bargaining contract negotiated in 1985, another 700 of the most senior paraprofessionals were reclassified as "permanent exempt," entitling them to some of the employment benefits enjoyed by civil service employees. The remaining 1,700 or so paraprofessionals are classified as "temporary exempt." The vast majority of paraprofessionals do not work full-time, averaging approximately 23 hours per week.

### The Nature of the Present Action

On December 16, 1986, petitioners Frankie Evans and Chestene Mason, who are employed as paraprofessionals but excluded from civil service status, brought a petition for writ of mandate and complaint for declaratory relief on behalf of themselves and all those similarly situated against respondents SFUSD, its board of education, and the San Francisco Civil Service Commission.

---

[3] Section 8.300(a)(2), provides, in pertinent part: "(a) All positions in all departments and offices of the city and county, including positions created by laws of the State of California, where the compensation is paid by the city and county, shall be included in the classified civil service of the city and county, and shall be filled from lists of eligibles prepared by the civil service commission, *excepting*: . . . .

"(2) all employees of the San Francisco Unified School District who serve in the capacity of paraprofessionals. . . ." (Italics added.)

Appellants allege that they are excluded from civil service status solely by virtue of the provisions of section 8.300(a)(2) and that, as the result of this exclusion, petitioners "have lost and continue to lose valuable benefits and rights," including retirement, social security, health and holiday vacation and job security protections.

The petition goes on to assert that the exclusion from civil service effectuated by section 8.300(a)(2) is unlawful because it is in direct conflict with and is preempted by section 45318, which guarantees such status to all employees of the SFUSD. Appellants request that the court enjoin the enforcement of section 8.300(a)(2), order the City to grant all paraprofessionals civil service status, and award petitioners and similarly situated paraprofessionals "all damages sustained . . . as a result of their unlawful exclusion from the Civil Service provisions of the San Francisco City Charter."

Expressly finding that there was "no conflict between Education Code § 45318 and § 8.300(a)(2) of the San Francisco City Charter" the trial court denied the petition and dismissed the complaint. Appellants appeal.

## APPEAL

The threshold issue for this court to decide is whether there is an irreconcilable conflict between the provisions of section 45318 and city charter section 8.300(a)(2).

■ We start with the principle that the city charter "represents the supreme law of the City and County of San Francisco, subject, of course, to conflicting provisions in the United States and California Constitutions, and to preemptive state law. [Citations.]" (*Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 161 [101 Cal.Rptr. 880, 496 P.2d 1248]; *United Public Employees* v. *City and County of San Francisco* (1987) 190 Cal.App.3d 419, 422 [235 Cal.Rptr. 477].) ■ Municipal legislation in conflict with state general law is void. (*Tri County Apartment Assn.* v. *City of Mountain View* (1987) 196 Cal.App.3d 1283, 1293 [242 Cal.Rptr. 438]; *Madsen* v. *Oakland Unified Sch. Dist.* (1975) 45 Cal.App.3d 574, 581 [119 Cal.Rptr. 531].) However it is a cardinal rule that state statutes should be construed, if at all possible, to avoid conflict with city charters. (*United Public Employees, supra,* 190 Cal.App.3d at p. 423; *Building Material & Construction Teamsters' Union* v. *Farrell* (1986) 41 Cal.3d 651, 665 [224 Cal.Rptr. 688, 715 P.2d 648].) Municipal legislation adopted by the voters should be given a construction which is in harmony with state law and does not result in its being declared a nullity. (*Hughes* v. *City of Lincoln* (1965) 232 Cal.App.2d 741, 749 [43 Cal.Rptr. 306]; see Civ. Code, § 3541.)

■ Appellants argue that the legislative intent to accord noncertificated employees of the SFUSD civil service status could not be more clear, pointing to both the unequivocal language of section 45318, as well as the letters to Governor Warren referred to above. No one doubts that section 45318 was intended to eliminate uncertainty over the status of noncertificated employees of San Francisco *in 1945* by bringing them under the umbrella of the civil service system which was then in place. The real question, however, is whether section 45318 was also intended to forever preclude the city from amending its charter so as to place prospective restrictions on the classes of employees covered by civil service. We believe that no such intent can be ascribed to the Legislature.

First of all, the California Constitution "confers upon the electors of a chartered county or city, the *absolute right* to amend such a public entity's charter." (*San Francisco Fire Fighters* v. *Board of Supervisors* (1979) 96 Cal.App.3d 538, 542 [158 Cal.Rptr. 145]; see Cal. Const., art. XI, § 3.) ■ While a city's power to amend its charter can be subject to legislative regulation (*People* ex rel. *Seal Beach Police Officers Assn.* v. *City of Seal Beach* (1984) 36 Cal.3d 591, 598 [205 Cal.Rptr. 794, 685 P.2d 1145]) an intent to do so should not be readily inferred in light of the strong policy in favor of harmonizing state and local laws whenever possible. (*United Public Employees* v. *City and County of San Francisco, supra,* 190 Cal.App.3d at p. 423; *City of Seal Beach, supra,* at pp. 596-601.)

■ Appellants have not produced anything in the legislative history of section 45318 which persuades us that the Legislature intended to preclude San Francisco from amending its civil service system to meet the future needs of its citizenry. As the City points out, paraprofessionals are simply one of a number of classes of employees which the City has chosen to place outside the merit system, including technical community college assistants, inmate help, student nurses and certain temporary and part-time employees. § 8.300, subds. (a)(1) through (6).)

The present case illustrates why the flexibility to amend the city charter to meet recruiting needs should be upheld. Of the employees who were "grandfathered" in under Proposition J in 1973, only 40 remain employed today. By contrast, as of 1986 when this suit was filed, more than 2,400 classroom aides were being employed throughout the school district. With the advent of minority programs and the increasing need for bilingual educators, the demand for classroom aides has far outpaced the ability of the City to employ the necessary number of aides and at the same time grant them full civil service benefits, given modern budgetary constraints. Proposition J foresaw this event and facilitated a far greater ability to meet these needs by prospectively exempting paraprofessionals from the merit

selection process. Under no stretch of the imagination can it be said that these events were foreseeable in 1945 when section 45318 was enacted.

A further justification for legislative tolerance of charter amendment in this area appears in the Education Code itself. In school districts other than San Francisco, a school district may choose either to adopt a merit system or a nonmerit system of employment for noncertificated employees. (See §§ 45220-45226.) Where the merit system is adopted, the code provides for exclusions from classified service for certain classes of employees, including part-time playground employees, students employed part-time and positions established for professional experts on a temporary basis. (§ 45256.) Selective exemption from the merit system is therefore not novel to the city charter system, nor is it inconsistent with state statutory scheme.

Article XI, section 3 of the California Constitution provides that the provisions of a city charter "are the law of the State and have the force and effect of legislative enactments." The same section also states that with respect to municipal affairs city charters "shall supersede any existing charter and all laws inconsistent therewith." Section 5(b) of Article XI grants to cities "plenary authority" over the compensation and qualifications, tenure and removal of municipal employees. These matters have traditionally been held to be ones of municipal rather than statewide concern. (See *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 316-317 [152 Cal.Rptr. 903, 591 P.2d 1]; *Swift* v. *County of Placer* (1984) 153 Cal.App.3d 209, 217 [200 Cal.Rptr. 181].)

■ "Chartered cities have full power to legislate on *municipal affairs* unless: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become *exclusively* a matter of state concern; (2) the subject matter has been partially covered by general law *couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action*; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.' " (*Tri County Apartment Assn.* v. *City of Mountain View, supra,* 196 Cal.App.3d 1283, 1295, quoting *In re Hubbard* (1964) 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809], italics added.)

■ Tested by these standards, state preemption of the city's power to modify its civil service system with respect to school district employees has not been established under the facts of this case. While the Legislature has adopted a comprehensive scheme for the classification of certificated school employees (*Berkeley Federation of Teachers* v. *Berkeley Unified School Dist.* (1986) 178 Cal.App.3d 775, 779 [224 Cal.Rptr. 44]), there is nothing in the

record to suggest that the job status of noncertificated employees of the SFUSD was intended to be regulated strictly by acts of the state Legislature. And although it clearly placed SFUSD noncertificated employees within the ambit of the civil service system in its then form, section 45318 is not couched in terms which demonstrate that the state would not tolerate future local amendments to the civil service system. Finally there is no overriding statewide concern which dictates that the City should be deprived of the flexibility to modify its merit system exemptions to meet the needs of an ever-changing school district.[4]

In summary, we agree with the trial court's conclusion that there is no irreconcilable conflict between section 8.300(a)(2) of the city charter and section 45318 of the Education Code, and therefore find that the latter section does not preempt the former. Accordingly the writ of mandate was properly denied.

## DISPOSITION

The judgment is affirmed.

Kline, P. J., and Benson, J., concurred.

---

[4] We emphasize that we do not base our holding on the so-called "home rule" doctrine, which holds that regulation by chartered cities with respect to *purely municipal affairs* is valid even if in conflict with state law. (See *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 135-136 [185 Cal.Rptr. 232, 649 P.2d 874]; *Sonoma County Organization of Public Employees* v. *County of Sonoma, supra,* 23 Cal.3d at pp. 316-318; *Cox Cable San Diego, Inc.* v. *City of San Diego* (1987) 188 Cal.App.3d 952, 961 [233 Cal.Rptr. 735].)

We recognize that the employment rights and protections of school district employees may properly be the subject of statewide concern. However, we find nothing in section 45318 indicating a state interest in preventing the City of San Francisco from adjusting its charter with respect to a subject that has historically been a matter of municipal concern.