[No. A131304. First Dist., Div. Four. Apr. 17, 2012.]

SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al., Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents;
SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1021, CTW, CLC, et al., Interveners and Respondents.

COUNSEL

Remcho, Johansen & Purcell, Robin B. Johansen, Thomas A. Willis; and Maribel S. Medina for Plaintiffs and Appellants.

Dennis J. Herrera, City Attorney, Therese Marie Stewart, Chief Deputy City Attorney, Gina Marie Roccanova, Deputy City Attorney, and Danny Yeh Chou, Chief of Complex and Special Litigation, for Defendants and Respondents.

Weinberg, Roger & Rosenfeld, Vincent A. Harrington, Jr., and Kerianne Steele for Intervener and Respondent Service Employees International Union Local 1021.

Peter Warren Saltzman, Leonard Carder and Kate Hallward for Intervener and Respondent International Federation of Professional and Technical Employees.

OPINION

**SEPULVEDA, J.**[*]—The San Francisco Unified School District (School District) filed an action for declaratory relief and a petition for a writ of mandate against the City and County of San Francisco (City) seeking a determination that the joint civil service system of employment for City and School District employees established by Education Code section 45318, as applied by the City, transfers school control to an entity outside the public school system, in violation of article IX, section 6 of the California Constitution. The trial court rejected the claim and entered judgment in favor of the City and employee unions that intervened on the City's side. We affirm the judgment.

## I. FACTUAL AND LEGAL BACKGROUND[1]

California has a statewide public education system managed locally by school districts that are distinct from municipalities. (Cal. Const., art. IX, §§ 5, 14.) The School District and City share coterminous geographic boundaries but are separate and autonomous government entities. The School District and City are each governed by a separate elected body, managed by a separate chief executive, funded by different sources of revenue, subject to different budgets, and established for different missions. The City is governed by an elected mayor and an 11-member board of supervisors. The School District is governed by an elected seven-member board of education. The School District's mission and responsibility is to educate City school children. The School District educates about 55,000 students in more than 140 schools citywide.

School District employees generally fall into two categories: (1) those who are certified to teach (certificated employees) and (2) those who are not certified to teach but perform other functions (classified employees). Classified employees include secretaries, nutritionists, financial specialists, information technology analysts, gardeners, health workers, custodians, and maintenance workers. The School District has about 1,800 classified employees.[2]

California provides job protection to classified school employees and has done so since 1935. (*Evans v. San Francisco Unified School Dist.* (1989) 209

---

[*]Retired Associate Justice of the Court of Appeal, First Appellate District, Division 4, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] The facts are taken from the parties' separate statements of undisputed facts and supporting materials. The parties' requests for judicial notice are granted.

[2] Some documents in the record put the number of classified employees at 1,500 but we use the number stated in the parties' statement of undisputed facts. The number of certificated employees is unclear but the City asserts that there are more than 4,800 certificated and paraprofessional employees.

Cal.App.3d 1478, 1481 [258 Cal.Rptr. 15] (*Evans*).) Generally, school districts must either establish a merit system or comply with detailed statutory provisions granting substantive rights on the hiring and retention of classified employees. (Ed. Code, §§ 45103, 45113, 45115–45117, 45240 et seq.) The School District here occupies a unique position in this scheme of worker protection.

At one time, before school and municipal governance were separated, School District workers were employees of the City under the civil service provisions of the city charter. (*Evans, supra*, 209 Cal.App.3d at p. 1480.) In 1935, when the Legislature adopted statewide merit standards for all classified school employees, the Legislature exempted districts lying within the boundaries of a city or city and county with merit systems of employment. (*Id.* at p. 1481.) The School District here is such a district. (*Ibid.*) "These events created some doubt and confusion among [School District] noncertificated employees as to whether they had a vested right to continued civil service status under the city charter or could lose that status by a court decision or action of the State Board of Education." (*Ibid.*) In response to these concerns, and at the request of the local board of education, the Legislature enacted Education Code section 45318 in 1945, explicitly placing School District classified employees in the City's civil service system.[3] (209 Cal.App.3d at p. 1481.) In short, Education Code section 45318 eliminated uncertainty over the status of School District classified employees in San Francisco "by bringing them under the umbrella of the civil service system which was then in place." (209 Cal.App.3d at p. 1484.) School District employees remain in the City civil service system today.

In its current form, Education Code section 45318, which is at the center of the issues raised on appeal, provides: "In every school district coterminous with the boundaries of a city and county, except for those paraprofessionals excluded from the charter provisions by a resolution adopted by the governing board of that district pursuant to Section 45100 [(i.e., classroom aides)], employees not employed in positions requiring certification qualifications shall be employed, if the city and county has a charter providing for a merit system of employment, pursuant to the provisions of that charter providing for that system and shall, in all respects, be subject to, and have all rights granted by, those provisions; provided, however, that the governing board of the school district shall have the right to fix the duties of all of its noncertificated employees."

---

[3] A later-enacted parallel provision, Education Code section 88137, places classified employees of the San Francisco Community College District (College District) within the City's civil service system as well.

Education Code section 45318 applies only to the School District here—the description of a "school district[] coterminous with the boundaries of a city and county" is "a description satisfied uniquely by San Francisco." (*Evans, supra*, 209 Cal.App.3d at p. 1481.) All other school districts have either a merit system separate from the municipality in which the districts reside (with a personnel commission representing both the district and classified employees) or are subject to Education Code provisions establishing job protections for classified employees. (Ed. Code, §§ 45103, subd. (a), 45243, 45245.) Here, municipal employees and district employees are in the same unified merit system.

The City's charter establishes a Civil Service Commission (Civil Service Commission or Commission), which adopts rules, policies, and procedures to administer the merit system. (S.F. Charter, §§ 10.100, 10.101.) The Commission consists of five board members, all of whom are appointed by the City's mayor to six-year terms. The School District has no representation on the Commission. The City's department of human resources functions as a personnel department and is responsible for implementing the rules, policies, and procedures of the Commission. The department of human resources has a director that manages its affairs and administers worker layoffs. The director's decisions are subject to review by the Commission. The director is appointed by the City Mayor and confirmed by the City Board of Supervisors.

The City's director of human resources classifies jobs according to the work performed. Each job class is assigned a number and an official designation of duties and qualifications and those numbers and descriptions are used throughout the civil service system. There are many systemwide job classifications encompassing City, School District, and College District workers, but also some job classifications are unique to the School District. The School District may request that special conditions or requirements (like foreign language proficiency) be imposed for a specific position within a class. The director of human resources, subject to review by the Commission, may accept or reject that request.

The City civil service system is a unitary system that applies to employees of the City, School District, and College District. The City has approximately 22,000 classified employees subject to the civil service system, and the School District has about 1,800 such employees. The record does not state the number of College District employees. Civil Service Commission Rules, rule 121.13.2 mandates a systemwide layoff procedure in which layoffs in a particular department apply to the least senior employee in each targeted job classification. An employee receiving a layoff notice may set off a "bumping" process within the civil service system: an employee whose position has been

targeted for layoff may take the job of a less senior employee in the same job classification in a different department.

The bumping process is accomplished by placing all permanent employees who are laid off on a holdover roster in order of seniority. The laid-off employee can then be moved into a vacant position in that same class within the system or can bump an employee in that class with the least seniority systemwide. If there is not a less senior employee to bump, the laid-off employee stays on the holdover roster for up to five years and continues to have reemployment rights. If the laid-off employee bumps a less senior employee, the less senior employee can, in turn, be placed on the holdover roster. An employee on a holdover roster continues to receive health benefits payable by the department for which the employee last worked.

In job classifications that the City, School District, and College District share, employees may transfer or bump into positions throughout the system. This process is made possible by the principle of a single, unified seniority system. Under that system, for example, a payroll clerk (job class 1220) at the School District has the same status as a payroll clerk in any City department. That payroll clerk may transfer to an open 1220 position at the fire department or College District.

City employees who bump into School District positions must serve a probationary period during which the School District may release the employee if his or her work is unsatisfactory. For City employees bumping into the School District, the probation period is generally three months but may be extended. The School District retains the ultimate control to terminate an employee for any legal reason during the employee's probationary period.

As a unitary personnel system, this bumping process between City and School District employees has existed for decades. Over the years, City employees have sometimes displaced School District employees, and School District employees have sometimes displaced City employees. As one long-time School District employee and union representative put it, the bumping process "is a two-way street." Tensions have risen of late as the current economic recession has stressed both the City and the School District with falling revenues. At issue here are recent City-initiated layoffs impacting the School District.

City layoffs displaced some School District employees in 2009 and 2010, the exact number of which is in dispute. The School District contends that, as of May 2010, 27 City employees were placed in School District positions. Of those 27 City employees, six were released during their probationary period, one resigned, and one transferred back to the City. Thus, in total, 19 City

employees stayed in the School District. The School District, to avoid losing employees it deemed critical, reassigned some workers to different positions and retained others as temporary exempt employees. The School District calculates that the City layoffs initiated in 2009 resulted in a total of 11 School District employees with permanent civil service status losing their jobs. In 2010, City employees displaced five additional School District employees.

Employee displacements have a financial impact on the School District. Among the costs incurred is the cost of health care benefits for School District employees that remain on the civil service holdover roster after being bumped by a City employee. The School District must pay between $5,392 and $12,634 in annual health care costs for each of its employees who have been bumped by a laid-off City employee and placed on a holdover list. The School District claims a "significant financial impact" from the City layoffs. The City argues that the School District's figures show a maximum annual impact in 2009 and 2010 of about $235,000, which "represents less than 0.04% of the [School] District's total budget." The City also maintains that the School District receives City funds and personnel services from the City-administered civil service program that far exceed any layoff costs.

Apart from financial considerations, the School District argues that the unified civil service system encompassing both City and School District employees "intrudes on the District's autonomy and ability to manage its affairs." The School District maintains that "the City has usurped ultimate control over many aspects of the District's staffing decisions, including its ability to retain employees, set job duties, attach special conditions to particular jobs, and recruit and hire qualified school employees." It is this grievance that led the School District to file suit against the City.

## II. TRIAL COURT PROCEEDINGS

In April 2009, the School District sued the City for declaratory relief. Two months later, the School District amended its complaint to add a petition for a writ of mandate. The School District alleged that systemwide layoff procedures in which City employees may take School District positions constituted an unlawful transfer of the School District's control in violation of article IX, section 6 of the California Constitution: "No school or college or any other part of the Public School System shall be, directly or indirectly, transferred from the Public School System or placed under the jurisdiction of any authority other than one included within the Public School System."

Among other relief sought, the School District asked for a declaratory judgment that the California Constitution prohibits the City from applying the

City's layoff procedures to noncertified School District employees, because doing so unlawfully transfers ultimate control over School District personnel decisions for the School District to the City, which is not part of the public school system, and substantially interferes with the Board of Education's control over School District affairs. The School District also sought "a writ of mandate requiring the City to recognize the District as a separate legal entity entitled to determine whether to administer its own merit system, and prohibiting the City from taking any action to place its employees in the District."

In August 2009, two employee unions intervened in the action and joined the City in resisting the claims of the School District. The unions are Service Employees International Union, Local 1021, CTW, CLC (SEIU), and the International Federation of Technical and Professional Employees, Local 21, AFL-CIO (Local 21). SEIU says it represents over 10,000 City employees and over 1,000 School District classified employees. Local 21 represents about 80 School District employees.

In October 2009, the trial court issued an order denying the School District's petition for a writ of mandate, leaving for later resolution the declaratory relief claim. The City and School District each filed motions for summary judgment on the declaratory relief claim, which were heard in July 2010. In September 2010, the court issued an order granting the City's motion for summary judgment and denying the School District's motion for summary judgment. The court held that Education Code section 45318 establishes a merit system for City and School District employees and that application of a systemwide layoff procedure under that statute does not violate article IX, section 6 of the California Constitution prohibiting outside entities from exercising authority over schools. In so holding, the court noted that the "civil service rules do not divest the District of ultimate control over its operations." In January 2011, the court entered judgment in favor of the City and intervener unions SEIU and Local 21. The School District filed a timely notice of appeal the following month.

## III. DISCUSSION

The School District contends that the merit system of employment for City and School District employees established by Education Code section 45318 (section 45318), as applied by the City, is unconstitutional because management and control of the schools has been transferred from the School District to the City Civil Service Commission, which is not part of the school system, and therefore violates article IX, section 6 of the California Constitution that prohibits outside agencies from exercising authority over schools.

## A.   *Types of challenges to the constitutional validity of a statute*

■   It is important to clarify the nature of the challenge. A challenge to the constitutional validity of a statute may be of two types: a facial challenge and an as-applied challenge. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) "A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual." (*Ibid.*) To support a determination of facial unconstitutionality, " ' "petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." ' " (*Ibid.*) In contrast, an as-applied challenge seeks "relief from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied." (*Ibid.*)

We are concerned here with an as-applied challenge. This is not always clear from the School District's briefing, which at times sounds like a facial challenge seeking total invalidation of section 45318. Thus, for example, the School District laments that it "is the only school district in the state that is subject to another entity's merit system" and states that "its strong preference" is "to be granted a full divorce" from the City, "leaving [the School District] free to establish its own merit system" apart from the City and the unified system established under section 45318, which the School District calls "an antiquated statute." Despite such strong language condemning section 45318, the School District also states that "nothing in section 45318 requires the City to administer the system in the manner that it has or in a way that runs afoul" of the Constitution. The School District emphasizes that it is protesting "the City's *application* of its merit system" and "is not seeking to strike down section 45318." (Italics added.) We are therefore concerned with an as-applied challenge to section 45318.

## B.   *The history and application of Education Code section 45318*

■   Section 45318 applies to this School District alone and, as the School District observes, makes it "the only school district in the state that is subject to another entity's merit system." Other school districts have either a merit system separate from the municipality in which the districts reside or are subject to specific provisions establishing job protections for classified employees. (Ed. Code, §§ 45103, subd. (a), 45243, 45245.) The School District here is unique—its employees share a unified merit system with the City. The reason is largely historical. The City had a civil service system covering school employees when the state created a scheme of job protection for

classified school employees and School District employees were simply continued in the existing City system. (*Evans, supra,* 209 Cal.App.3d at pp. 1480–1481.) To assure School District employees that they continued to be included in the City's merit system, the Legislature enacted section 45318, which, as presently stated, provides that "[i]n every school district coterminous with the boundaries of a city and county," which describes the School District alone, "employees not employed in positions requiring certification qualifications" shall be employed pursuant to the provisions of the city and county's "charter providing for that system and shall, in all respects, be subject to, and have all rights granted by, those provisions; provided, however, that the governing board of the school district shall have the right to fix the duties of all of its noncertificated employees."

The City's charter establishes the Civil Service Commission, which adopts rules, policies, and procedures to carry out the civil service merit system provisions of the charter. (S.F. Charter, §§ 10.100, 10.101.) The City's Civil Service Commission has always had this power, from the time the charter was first adopted in 1932. The Commission has rules that require classification of job positions "in accordance with the level, scope and occupational concept of the assigned duties"; grant employees status in a class; calculate seniority based on time served in a class; and process layoffs based on seniority. (S.F. Civil Service Com. Rules, rule 109.4; see *id.,* rules 109.9, 121.2.1, 121.5.) These rules apply to all civil service employees, with the exception of uniformed ranks of the police and fire departments and critical transit workers (who are governed by distinct rules). (S.F. Civil Service Com. Rules, rule 121.)

The School District contends that the application of civil service rules to the classification and layoff of employees to School District employees is unconstitutional because the rules intrude on the autonomy granted public schools under article IX, section 6 of the California Constitution. The School District contends that the Constitution requires the City's Civil Service Commission to formulate separate rules for School District employees, as the Commission has done for firefighters, police officers, and transit workers. The School District asks this court to "require the City to administer the [civil service] system in a manner that would comply with the Constitution, by creating a District-only classification system and insuring that City layoffs do not affect the District."

The practical difficulties with the School District's proposed remedy are considerable. As the City notes, it "has provided the District with personnel services worth millions of dollars over the course of 85 years. It has done so with the understanding that its obligation was to run a single civil service system, not two semi-separate and parallel systems. If the system were to be

partially split, the resulting uncertainty would likely last for years and require the City to expend additional significant resources, not only in deciding how to reconfigure the system and adjudicating the rights of employees within it, but also in resolving the likely claims against the City by employees whose rights have been affected and the unions that represent them." SEIU, the employees' union, makes a similar observation in noting that employee status and collective bargaining agreements have been premised on the shared personnel system. Rather than reformulate the civil service system, the City asks that if we find section 45318 unconstitutional as applied, we invalidate the statute "in its entirety and absolve the City from any legal obligation to spend millions of dollars administering a civil service system of the District's noncertificated employees." The School District insists that reformulation is possible but would welcome total invalidation of section 45318 if we find that the statute cannot be harmonized with the Constitution. We need not resolve the difficulties posed by the School District's proposed remedy because we conclude, in the discussion that follows, that section 45318 is constitutional as applied, requiring neither statutory invalidation nor reformulation of the civil service system.

C. *Education Code section 45318, as applied by the City, does not violate article IX, section 6 of the California Constitution*

The California Constitution, article IX, section 6, provides: "The Public School System shall include all kindergarten schools, elementary schools, secondary schools, technical schools, and State colleges established in accordance with law and, in addition, the school districts and the other agencies authorized to maintain them. No school or college or any other part of the Public School System shall be, directly or indirectly, transferred from the Public School System or placed under the jurisdiction of any authority other than one included within the Public School System." This provision "is designed to insure that the important task of public education is provided by, and under the guidance of, one uniform system of public schools and that the ability of that system to discharge its duty fully is not impaired by the dissipation of authority and loss of control that would result if parts of the system were transferred from the system or placed under the jurisdiction of some other authority." (*California Teachers Assn. v. Board of Trustees* (1978) 82 Cal.App.3d 249, 254 [146 Cal.Rptr. 850], italics omitted.)

The School District contends that the City's application of civil service rules to classified employees of the School District effectively transfers management and control of the schools from the School District to the City Civil Service Commission, which is not part of the public school system. There are two elements to the School District's argument: (1) the City Civil Service Commission is not part of the public school system, and (2)

Commission civil service rules on the classification and layoff of School District classified employees transfer ultimate control of the schools from the School District to the Commission.

We accept the first element of this argument, over the City's objections. The City maintains that the City Civil Service Commission should be considered part of the public school system within the meaning of the Constitution, as an agency "authorized to maintain" and aid the schools with a civil service system that was established under section 45318 before the constitutional provision was enacted. (Italics omitted.) The argument has some appeal. However, at least one court has held that the *only* entities that are part of the public school system within the meaning of article IX, section 6 of the Constitution are those entities *"constitutionally authorized* to maintain public schools" that are listed in article IX, such as the State Superintendent of Public Instruction and county boards of education. (*Mendoza v. State of California* (2007) 149 Cal.App.4th 1034, 1059 [57 Cal.Rptr.3d 505] (*Mendoza*); see Cal. Const., art. IX, §§ 2–3.3.) On this point, the City claims the *Mendoza* court "is wrong." We need not resolve that claim. We will assume, as the trial court found and the School District contends, that the City Civil Service Commission is not part of the public school system within the meaning of article IX, section 6 of the Constitution and will turn to the second element of the School District's case.

The School District's case falters on the second element of its argument: its claim that the City Civil Service Commission's classification and layoff of School District employees transfers ultimate control of the schools from the School District to the Commission. *Mendoza, supra,* 149 Cal.App.4th 1034 is instructive here, as the only case ever to find a violation of the constitutional provision at issue. As the trial court noted, *Mendoza* involved facts "far more extreme" than the facts of this case. In *Mendoza,* 2006 legislation transferred "complete operational control" of several elementary, middle, and high schools from the local board of education to the Los Angeles mayor and entities controlled by him. (*Id.* at pp. 1044–1047, 1057–1063.) Public school system authorities were divested of all management, control, monitoring, and oversight of the schools. (*Id.* at pp. 1061–1062.) The court found the transfer of school control unconstitutional. (*Ibid.*) The court also found unconstitutional a legislative provision granting a mayor-controlled entity veto power over the selection of the local school superintendent because *"ultimate control"* over the selection of the superintendent was transferred from the board of education to an entity outside the public school system. (*Id.* at pp. 1062–1063.) "While the Board can make the initial selection of the District Superintendent (or whether to fire, or retain an individual in that position), that act is for naught without the approval of the Council of

Mayors. As such, control over the very crucial selection of the District Superintendent is out of the hands of the public school system." (*Id.* at p. 1063, italics omitted.)

■ The facts here are far different. Unlike *Mendoza*, the City Civil Service Commission Rules administered under section 45318 do not divest the School District of ultimate control over the schools or any part of the public school system. It is true that the civil service rules place limits on the School District's personnel decisions concerning classified employees but those limits do not transfer ultimate control of those employees from the School District to the City Civil Service Commission. As the trial court rightly found, the School District "retains the ability to set the duties of and manage its employees. The District, not the [City] defendants, is in control of for-cause dismissals, and the District is able to terminate an incoming bumper for any reason during that employee's probationary period. . . . The District may also seek to create District-only classifications and impose special qualifications on a City-wide classification above and beyond the usual requirement."

■ Functions, like the personnel functions here, may be delegated to entities outside the public school system, provided that ultimate control remains in the system. This is the import of *California Teachers Assn. v. Board of Trustees, supra*, 82 Cal.App.3d 249, which upheld the delegation of driver training instruction to private companies against a challenge under article IX, section 6 of the Constitution. The court held that delegation of a function, whether a teaching or administrative function, "does not constitute a transfer of a part of the public school system in violation of article IX, section 6" of the Constitution "if done under the control and supervision of the school district." (*California Teachers Assn.*, at p. 255.) To similar effect is *California Sch. Employees Assn. v. Sunnyvale Elementary Sch. Dist.* (1973) 36 Cal.App.3d 46, 52, 57–58 [111 Cal.Rptr. 433], which held that a school district's contract with a private company for research and development services did not violate article IX, section 6 of the Constitution. The court stated: "If it were true, as appellants argue, that any agreement with an outside agency to perform nonteaching-related functions, was a transfer of a part of a public school system to an outside authority, then arguably a school district could never contract with any outside agency to provide research and development services in particular, or for that matter, any services. [¶] Such is not the law in California." (*Sunnyvale, supra*, at pp. 57–58.)

When put in a historical context, it is clear that the section 45318 delegation of personnel functions for School District classified employees to the City Civil Service Commission is fully consistent with article IX, section 6 of the Constitution. As explained in detail above, the Legislature placed

School District classified employees in the City's civil service system with the enactment of section 45318 in 1945. (*Evans, supra,* 209 Cal.App.3d at p. 1480.) Section 45318 made School District employees "subject to" the City charter provisions providing for a civil service system, and the charter at that time established a Civil Service Commission that set uniform job classifications and layoff rules, as it does now.

A year later, in 1946, the voters amended article IX, section 6 of the Constitution to provide a minimum annual salary for teachers, to require a specific amount of state financial support, and (relevant here) to prohibit the transfer of schools or a part of the public school system to an authority outside that system. The ballot pamphlet from the 1946 election is in the record but the ballot arguments for and against the constitutional amendment do not address the provision that concerns us here. (*Mendoza, supra,* 149 Cal.App.4th at p. 1058, fn. 20.) The ballot arguments limited the debate to the advisability of mandating state support and minimum teacher salaries. The only mention of the provision at issue in this appeal is the official characterization of the provision provided to the voters in the ballot pamphlet. The voters were told that the provision "Prohibits transfer of any school or college to any authority not under the Public School System." (Ballot Pamp., Gen. Elec. (Nov. 5, 1946) text of Prop. 3, p. 4.)

■ Importantly, nothing in the history or circumstances attending the voters' adoption of article IX, section 6 of the Constitution suggests that the voters intended to circumscribe the City's existing authority to administer a unified civil service system covering City and School District classified employees. The unified civil service system does not transfer any school to an authority not under the public school system, which was the concern of the constitutional amendment as identified in the ballot pamphlet. Although the unified civil service system does delegate certain personnel functions to the City, that delegation existed before the Constitution was amended. "The implied repeal of a statute by a later constitutional provision is not favored . . . ." (*Metropolitan Water District v. Dorff* (1979) 98 Cal.App.3d 109, 114 [159 Cal.Rptr. 211].) Here, in the absence of any evidence to the contrary, we decline to hold that the adoption of article IX, section 6 of the Constitution prohibiting the transfer of schools and their operations outside the school system precludes the delegation of certain school personnel functions that had been sanctioned by the Legislature just one year previously.

We are not unsympathetic to the School District's concerns regarding the manner in which the civil service rules can wreak havoc on their personnel planning and budgeting, especially in lean financial times. This is not, however, the proper subject of judicial action. The sole, and narrow, question

before us is whether the application of the City's civil service rules to School District personnel constitutes the transfer of part of a public school system to the jurisdiction of another authority. As we have explained, we cannot so conclude. The School District's remedy, if any, is properly a legislative one.

## IV.   DISPOSITION

The judgment is affirmed.

Reardon, Acting P. J., and Rivera, J., concurred.